# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | Case No. 25-11336 |
| JASON DICKS, | Hon. Jessica E. Price Smith |
| Debtor. | Chapter 11 Subchapter V |

## OBJECTION OF JOSEPH T. CIRESI, CASSIE CIRESI AND ZEPPE'S TAVERN FRANCHISE LLC TO CONFIRMATION OF JASON DICKS'S PLAN OF REORGANIZATION DATED JUNE 30, 2025

Creditors Joseph T. Ciresi, Cassie Ciresi and Zeppe's Tavern Franchise LLC (collectively, the "Zeppe Parties"), by and through their undersigned counsel, object (the "Objection") to confirmation of *Jason Dicks's Plan of Reorganization Dated June 30, 2025* [Docket No. 39] (the "Plan") filed by Jason Dicks, the debtor in the above-captioned subchapter V case (the "Debtor"). In support of the Objection, the Zeppe Parties state as follows:

This Court should deny confirmation of the Debtor's Plan because it is neither feasible nor fair and equitable to creditors.

## BACKGROUND FACTS

1. On February 23, 2023, the Debtor entered into a Membership Interest Purchase Agreement with Joseph T. Ciresi (the "MIPA") pursuant to which the Debtor agreed to purchase from Mr. Ciresi and Mr. Ciresi agreed to sell to the Debtor, 100% of the membership interests in Pizzeria Management III, LLC ("PMIII") for the total amount of $575,000 (the "Purchase Price"). The Debtor agreed to pay the Purchase Price as follows: (a) payment of $100,000 in cash at the closing; (b) the Debtor's execution and delivery of a mortgage note in the amount of $150,000 secured by a mortgage on the Debtor's residence (the "Mortgage Note"); and (c) the Debtor's execution and delivery of a promissory note in the amount of $325,000 (the "Note") secured by a

23885850 _1

pledge of the Debtor's membership interests in PMIII and a security interest in all of PMIII's assets.

2. To secure the Debtor's obligations to Mr. Ciresi under the Mortgage Note, the Debtor executed a mortgage in favor of Mr. Ciresi upon the Debtor's residence located at 13910 Claridon Troy Road, Burton, OH (the "Home"). To secure the Debtor's obligations under the Note, the Debtor executed and delivered a (i) Pledge Agreement pursuant to which the Debtor granted to Mr. Ciresi a security interest in the Debtor's membership interests in PMIII and (ii) a Security Agreement (which was also executed by PMIII) pursuant to which the Debtor and PMIII granted to Mr. Ciresi a security interest in all of PMIII's assets (the "Security Agreement"). In conjunction with the Pledge Agreement, the Debtor also executed and delivered to Mr. Ciresi an Assignment of Membership Interests assigning the Debtor's membership interests in PMIII to Mr. Ciresi (the "Assignment", and collectively with the MIPA, the Mortgage Note, the Note, the Pledge Agreement and the Security Agreement, the "Purchase Documents"). A true and correct copy of the Pledge Agreement and the Assignment is attached hereto as **Exhibit A**.

3. In addition, pursuant to the terms of the MIPA, Mr. Ciresi agreed to assign the lease for the premises located at 11110 Kinsman Road, Newbury Township, Ohio 44065 (the "Premises") to the Debtor subject to the Landlord's consent and the Debtor agreed to accept and comply with the covenants, obligations and promises in the lease. As a result, PMIII executed a Third Amendment to Lease (the "Lease Amendment") with Newbury Center LLC (the "Landlord") acknowledging that ownership in PMIII changed from Mr. Ciresi to the Debtor. The Lease Amendment incorporates the terms of that certain Agreement with Landlord by and between the Debtor and Landlord (the "Landlord Agreement") and increased the amount of the security deposit

under the Lease. A true and correct copy of the Lease Amendment and the Landlord Agreement is attached hereto as **Exhibit B**.

4. The Debtor also signed a Franchise Agreement with Zeppe's Tavern Franchise LLC ("Zeppe's") which sets forth the Debtor's rights and obligations related to the operation of a Zeppe's tavern restaurant at the Premises by PMIII (the "Franchise Agreement").[1]

5. The Note matured and a balloon payment in the amount of $314,257.65, was to be paid to Mr. Cireci, on April 1, 2025.

6. On March 31, 2025, the Debtor filed a voluntary petition under chapter 11 subchapter V of the Bankruptcy Code [Docket No. 1] to prevent Mr. Ciresi from exercising his rights under the Purchase Documents.

7. On June 30, 2025, the Debtor filed the Plan.

**OBJECTION TO CONFIRMATION OF THE DEBTOR'S PLAN**

8. The Zeppe Parties object to confirmation of the Debtor's Plan because it is not feasible and it is not fair and equitable to creditors.

9. <u>No Authority for Increased Salary</u>. As an initial matter, the Debtor's Plan is predicated upon the Debtor's receipt of a salary in the amount of $108,000 per year – presumably from Pizzeria Management III LLC ("PMIII"), who also is a debtor in a subchapter V case pending before this Court. However, when this case was filed, the Debtor was earning $50,000 per year. *See* Schedule I of the Debtor's Schedules of Assets and Liabilities [Docket No. 17]. Upon information and belief, the Debtor does not work full time for PMIII and neither the Debtor nor

---

[1] Due to the voluminous nature of the Franchise Agreement and concerns regarding confidentiality, the Franchise Agreement is not attached to the Objection. However, the Franchise Agreement will be made available upon request following entry of a mutually agreeable protective order.

3

PMIII have articulated an acceptable justification for or obtained authority from this Court to implement such an increase.

10. <u>The Plan Does Not Contemplate Payment of all Administrative Expenses</u>. Second, even if PMIII is permitted to double the Debtor's salary, the Plan does not provide for payment of the deferred royalties owed by the Debtor to Zeppe's nor does it explain how the Debtor will pay any of the other administrative expenses (consisting of approximately $35,000 owed to Debtor's counsel and $5,000 owed to the Subchapter V Trustee). The budget attached to the Plan as Exhibit B which sets forth the calculation of the Debtor's projected disposable income shows projected disposable income of $914.42 per month (without including a line item for the payment of administrative expenses). Not including the amount of deferred royalties owed to Zeppe's, the Plan provides that the Debtor owes at least $40,000 in administrative expenses, and it does not provide any information about how the Debtor will be able to pay the administrative expenses in full as required under the Bankruptcy Code.

11. <u>The Plan Provides for Rejection of the Franchise Agreement</u>. Perhaps most importantly, Section 7.01 of the Plan calls for the rejection of the Franchise Agreement. However, once the Franchise Agreement is rejected, both the Debtor and PMIII will be barred from operating a Zeppe's or any restaurant at the Premises.

12. Specifically, Section 18 of the Franchise Agreement provides in pertinent part that upon termination or expiration of the Franchise Agreement, the Debtor must: "immediately and permanently stop operating the Franchised Business" (Franchise Agreement, section 18.1), "immediately and permanently cease to use, in any manner whatsoever, all aspects of the System, including any confidential methods, procedures and techniques associated with the System, the mark Zeppe's Tavern and any and all other Proprietary Marks . . . (Franchise Agreement, section

18.2); and cancel any assumed name or equivalent registration which contains the mark Zeppe's Tavern and any other Propriety Marks (Franchise Agreement, section 18.3).

13. Moreover, Section 19.3 of the Franchise Agreement provides in relevant part as follows:

> [Y]ou covenant and agree that, during the term of this Agreement and for a continuous period of two (2) years after the expiration or termination of this Agreement . . ., you will not directly, indirectly, for yourself, or through, on behalf of, or in conjunction with any party, in any manner whatsoever, do any of the following:
>
> 19.3.2 Own, maintain, develop, operate, engage in, assist, franchise or license, make loans to, lease real or personal property to, and/or have any whatsoever interest in, or render services or give advice to, any Competitive Business.[2]

14. The non-compete and confidentiality clauses of the Franchise Agreement survive rejection. See *In re Empower Central Michigan*, 661 B.R. 222 (Bankr. E.D. Mich. 2024) (holding that the confidentiality and non-competition terms of a rejected franchise agreement continue to bind the debtor post-rejection). Thus, the Debtor will not be permitted to use any of Zeppe's proprietary information and intellectual property, nor will it be able to operate a Competitive Business from the Premises (if it is able to continue operating at the Premises at all).

15. Furthermore, the Landlord Agreement requires the Premises be used solely for the operation of a Zeppe's. Consequently, if neither the Debtor nor PMIII can operate a Zeppe's (or any restaurant) at the Premises, there is no basis for the Debtor's financial projections, and the feasibility and implementation of the Plan are in serious doubt.

---

[2] Section 19.2.2 of the Franchise Agreement defines "Competitive Business" as a casual dining restaurant whose sales of pizza, pastas, salads, burgers, subs, sandwiches, and alcoholic beverages do not exceed twenty percent (20%) of that restaurant's Gross Sales.

16. <u>The Debtor Does Not Offer Any Evidence for Valuation of the Home</u>. In addition to the foregoing, the Debtor offers no evidence to support the scheduled fair market value of the Home of $353,700. The Debtor purchased the Home in 2022 for $390,000, the Geauga County Auditor lists the taxable amount of the Home as $378,000, and Zillow estimates the value to be $481,300. Attached hereto as **Exhibit C** are screenshots from the Geauga County Auditor and Zillow. As such, the Zeppe Parties submit that the value of the Home as scheduled by the Debtor is artificially low and the Debtor should be required to offer proof of such valuation.

17. <u>The Plan Period Should be Extended</u>. The Zeppe Parties also object to the proposed 3-year duration of the Plan. Pursuant to Subchapter V, a three-year plan is the minimum term of a plan. Section 5.04 of the Plan provides that there are approximately $1,188,538.38 Allowed Unsecured Claims, and Exhibit B of the Plan estimates the Debtor's projected disposable income is $10,973.04, without taking into account payment of more than $40,000 in administrative expenses. Given that the Debtor's projected disposable income is only $10,973.04 for the entire three-year period, it is unlikely there will be any payments made to unsecured creditors. Consequently, the Debtor should be required to extend the Plan beyond the minimum duration.

18. <u>Reservation of Rights</u>. The Plan cannot be confirmed as it is neither feasible nor is it fair and equitable to creditors. Accordingly, confirmation of the Plan should be denied. The Zeppe Parties reserve their rights to object to other deficiencies at the hearing on confirmation of the Plan.

WHEREFORE the Zeppe Parties respectfully ask the Court to (i) sustain the Objection, (ii) deny confirmation of the Debtor's Plan, and (iii) grant to the Zeppe Parties such other just relief as is warranted under the circumstances.

Respectfully submitted,

*/s/ Heather E. Heberlein*
Heather E. Heberlein (0083828)
Roetzel & Andress LPA
1375 East Ninth Street, Suite 1000
Cleveland, Ohio 44114
Telephone (216) 298-0801
Email: hheberlein@ralaw.com

Counsel for Joseph T. Ciresi, Cassie Ciresi and Zeppe's Tavern Franchise LLC

**Certificate of Service**

  I hereby certify that on September 26, 2025, a true and correct copy of Objection of the Zeppe Parties to Debtor's Plan of Reorganization was served upon the following in the manner indicated:

  Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- Christian E Carson christian@carsonlaw.com
- Thomas W. Coffey tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com
- Daniel J. Feko dfeko@simonattys.com, simondocket@simonattys.com
- Patricia B. Fugee patricia.fugee@fisherbroyles.com, cpbf11@trustesolutions.net
- Heather E. Heberlein hheberlein@ralaw.com, mvitou@porterwright.com
- Richard John LaCivita bknotice@reimerlaw.com, rlacivita@ecf.courtdrive.com
- Spencer Lutz spencer.lutz@usdoj.gov
- Frederic P. Schwieg fschwieg@schwieglaw.com
- United States Trustee (Registered address)@usdoj.gov

             */s/ Heather E. Heberlein*
             Heather E. Heberlein (0083828)