**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE JASON DICKS<br>*Debtor* | CASE NO. 25-11336<br>JUDGE PRICE SMITH<br>CHAPTER 11<br>SUBCHAPTER V |

**<u>JASON DICKS'S PLAN OF REORGANIZATION DATED FEBRUARY 23, 2026</u>**

This Plan of Reorganization Dated February 23, 2026 ("**<u>Plan</u>**") is filed by the debtor and debtor in possession, Jason Dicks ("**<u>Debtor</u>**") under Subchapter V of Title 11 of the United States Bankruptcy Code.

# Article 1: Background of This Case

## 1.01 Description and History of the Debtor's Business

The Debtor is the sole owner of Pizzeria Management III LLC ("PM3"). PM3 is in its own Chapter 11 Bankruptcy case under Subchapter V of Chapter 11 of the Bankruptcy Code, Case No. 25-11334. PM3 operates a restaurant and tavern at 11110 Kinsman Rd., Newbury Ohio ("Newbury Tavern"). The Debtor as an individual is a franchisee of Zeppe's Tavern Franchise LLC ("Zeppe's).

## 1.02 Overview of the Debtor's Current Financial Structure

The Debtor has personal credit, the franchise and loan agreements and related documents described below.

### (a) Debtor's Financing Arrangements with Lakeview Loan Servicing, LLC c/o ServiceMac, LLC ("Lakeview")

On or about August 10, 2022, the Debtor entered into a loan and mortgage agreement with Guaranteed Rate, Inc. that is now serviced or held by Lakeview and secured by a first priority mortgage on his residence at 13910 Claridon Troy Rd, Burton Ohio ("Home"). Lakeview filed Proof of Claim ("POC") No. 17 asserting that $337,248.76 remains owing on this loan as of the Petition Date.

### (b) Debtor's Financing Arrangements with Park National Bank ("Park")

On or about August 24, 2022, the debtor entered into a loan agreement with ("Park") for the purchase of a 2014 Ford F-350 pickup truck ("Ford Truck") secured by a purchase money security interest noted on the title for said vehicle. Park filed POC No. 8 asserting that $28,611.38 remains owing on this loan as of the Petition Date.

### (c) Debtor's Financing Arrangements with Zeppe's and Joseph Ciresi

On February 23, 2023, the Debtor entered into a Membership Interest Purchase Agreement ("Purchase Agreement") with Joseph T. Ciresi ("Ciresi") under which the Debtor acquired 100% of the membership interests in PM3 from Mr. Ciresi in return for a purchase price of $575,000 ("Purchase Price"). The Purchase Price was paid as follows: $100,000 in cash was paid at closing; a cognovit note payable for unclear reasons to Mr. Ciresi and Cassie Ciresi for $150,000

and secured by a second priority mortgage on the Home to Mr. Ciresi ("Ciresi Mortgage and Note"); and another note made by the Debtor and PM3 and again payable for unclear reasons to Mr. Ciresi and Cassie Ciresi for $325,000 which was purportedly secured by a Membership Interest Pledge Agreement ("Pledge Agreement and Note") which pledged the purchased membership interests in PM3 as collateral for the second note.

At or about the same time as the execution of the Purchase Agreement, the Debtor entered into a franchise agreement with Zeppe's for the Newbury Tavern operated by PM3 ("Franchise Agreement").

**(d) Debtor's Financing Arrangements with iPlanGroup FBO Christian Carson**

iPlanGroup FBO Christian Carson ("Carson") funded the $100,000 in cash paid to Mr. Ciresi under the Purchase Agreement. On March 1, 2025, the Debtor and PM3 signed an Amended and Restated Loan and Security Agreement whereby Mr. Carson lent an additional $40,000 to PM3 and Mr. Dicks for PM3 Operating expenses, and in return granting Mr. Carson a security interest in accounts, inventory, and equipment. March 14, 2025, Mr. Carson filed a Uniform Commercial Code Financing Statement (UCCFS") against the Debtor for the amounts owed on this loan. To the extent the Debtor has any property subject to this interest, the security interest is avoidable as a preferential transfer under 11 USC 547 or attached to titled motor vehicles and there is no lien noted on the title. The Debtor and PM3 owe Mr. Carson $117,000.00.

**(e) Debtor's Unsecured Financing**

The Debtor has several credit cards and signed on lines of credit most of which were used to fund PM3's business operations. The approximate amount of these creditors is $396,000.

## 1.03 Description of Events Leading to Bankruptcy Filing

Zeppe's threatened to terminate PM3's franchise and to repossess the location. As all of the relevant documents including the Franchise Agreement are with the Debtor, both PM3 and the Debtor filed to prevent Zeppe's attempt to seize the Debtor's and PM3's assets.

## 1.04 Description of Events During Bankruptcy

The Debtor filed an adversary proceeding to determine and avoid the mortgage and security interests of Ciresi in the Home and the Debtor's PM3 Membership Interests, and challenges the validity of the Ciresi claim.

Due to a shortfall of income shortly after the Petition Date, the Debtor fell behind on monthly payments due on his first mortgage with Lakeview. The Debtor caught these payments back up by making 4 monthly payments of $5,000 each and the Debtor is and will remain current with Lakeview as of the Effective Date.

## 1.05 Chapter 7 Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a liquidation Chapter 7 of the Bankruptcy Code on the Confirmation Date. The Chapter 7 liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit A ("Liquidation Analysis"). The Liquidation Analysis was prepared by the Debtor using guidance from his counsel. The Liquidation Analysis assumes that the Chapter 7 Trustee would not pursue certain avoidance recoveries, due to the cost of litigation and the likelihood of

recovery. It also assumes the Home would be abandoned as there is no equity for unsecured creditors, and that certain assets such as vehicles are net of exemption claims by the Debtor. The projected liquidation values are 50% of the scheduled value and it is assumed a chapter 7 trustee will not administer a case with less than $5,000 worth of assets.

### 1.06 Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. *See* 11 U.S.C. § 1190.

The Debtor's financial projections prepared by the Debtor and attached as Exhibit B show that the Debtor will have total projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code) for the 5-year period described in Section 1191(c)(2) of $54,865.20 (the "**Projected Disposable Income**"). **The Debtor will only pay Projected Disposable Income actually generated from his income in full satisfaction of all Claims.**

The final Plan payment is expected to be paid 60 months after the initial Distribution Date of this Plan or when all Claims have been Allowed.

The Debtor has also made certain assumptions regarding food, material, and fuel costs all of which have increased dramatically in the last year. Interest rates have been low for an extended period but are now possibly increasing. Therefore, changing economic conditions could affect the accuracy of the Debtor's projections. The projected amount of professional fees could change depending on litigation over this Plan or Claims. The actual costs for these items could therefore be substantially different from the amounts projected on Exhibit B.

## Article 2: Plan Summary

This Plan of Reorganization under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from the future actual disposable income of the Reorganized Debtor.

This Plan provides for:

1 class of Priority Claims;
2 classes of Secured Claims; and
1 class of non-priority Unsecured Claims.

Creditors holding Allowed Claims in Classes 1, 2, and 3 will receive Distributions which the Debtor has estimated to be approximately 100 cents on the dollar during the term of this Plan. Class 4 will also receive approximately1% if all of their Allowed Secured Claim are Allowed as filed, and greater if some claims are disallowed or paid in the PM3 Bankruptcy Case. This Plan provides for full payment of administrative expenses and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 3: Classification of Claims and Interests

| | | |
|---|---|---|
| **3.01** | **Class 1.** | This class consists of all allowed claims entitled to priority under Section 507(a) of the Bankruptcy Code (except Administrative Expenses dealt with in section 4.02 below and Priority Tax Claims dealt with in Section 4.03 below). |
| **3.02** | **Class 2.** | This Class consists of the Undisputed Allowed Secured Claims of the Geauga County Auditor ("Auditor"), Lakeview and Park. |
| **3.03** | **Class 3** | This Class consists of the Disputed Secured Claims of Ciresi. |
| **3.04** | **Class 4** | This Class consists of the Disputed Secured Claims of Carson. |
| **3.05** | **Class 5** | This Class consists of Allowed Unsecured Claims |

## Article 4: Treatment of Administrative Expenses, Priority Tax Claims, and Quarterly and Court Fees

| | |
|---|---|
| **4.01 Unclassified claims** | Under Section 1123(a)(1), Allowed Administrative Expenses and priority tax claims are not in classes. |
| **4.02 Administrative expenses** | If this Plan is confirmed under Section 1191(a) or (b) of the Bankruptcy Code, Administrative Expenses will be paid in 60 monthly installments over the life of the Plan.<br><br>Administrative Expenses arising in the ordinary course of business after the Petition Date shall be paid in full by the Reorganized Debtor according to the terms of the obligation.<br><br>The Debtor estimates that he will owe he counsel $32,000.00 in legal fees as of the Effective Date, $8,000.00 to the Trustee in fees as of the Effective Date. These sums do not include offsets for interim payments made to professionals pursuant prior to the Effective Date, or retainers held by counsel. |
| **4.03 Allowed Priority Tax Claims** | The Debtor believes there is one Allowed Priority Tax Claim to the IRS of $8,900.91.<br><br>The IRS Priority Tax Claim will be paid in 60 monthly installments from the Petition Date bearing interest at the applicable statutory rate (currently 7.0%) until paid in full. If the Debtor becomes eligible for tax refunds in future tax years during the term of this Plan, such refunds will first be used to reduce the IRS Priority Tax |

| | | |
|---|---|---|
| | | Claim, and then to make other payments under the Plan once such Priority Tax Claim is paid in full. |
| **4.04** | **Statutory fees** | All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan will be paid on or before the Distribution Date. |
| **4.05** | **Prospective quarterly fees** | As a Subchapter V debtor there are currently no quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7). If these are subsequently reimposed, they will accrue and be paid timely until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. |

## Article 5: Treatment of Claims and Interests Under the Plan

### 5.01 Class 1 – Allowed Priority Claims -- Impaired and entitled to vote on this Plan

This Class consists of all Allowed Priority Claims. Debtor believes there are no creditors in this class.

**Treatment**

Unless it agrees to a different treatment, any Creditor holding an Allowed Priority Claim in this Class shall be entitled to be paid in full in Cash on the Distribution Date.

### 5.02 Class 2 – The claims of the Auditor, Lakeview and Park – Unimpaired and not entitled to vote this Plan

This Class consists of the Allowed Claims of the Auditor, Lakeview and Park.

**Treatment**

The Auditor will retain all his liens and rights under state law against the Home, and the real estate taxes on the Home will be paid according when due via the escrow set up with Lakeview for their payment.

Lakeview will retain all of its liens and rights under its loan agreement and against the Home, and the Lakeview loan will be paid according to its terms when due. The payments on the Lakeview loan are approximately $3,033.01 per month, which includes an escrow for real estate taxes on the Home owed to the Auditor, and for homeowner's insurance. Under the Plan Lakeview is authorized to disburse those amounts to the Auditor and the homeowner's insurance company for premiums when due.

Park will retain all its liens and rights under its loan agreement and against the Ford Truck, and the Park Loan will be paid according to its terms when due, in monthly payments of $706.74.

**5.03 Class 3 – Class 3 –Disputed Secured Claims of Ciresi-- Impaired and entitled to vote on this Plan**

This Class consists of the secured claims of Ciresi.

The Home has an appraised fair market value of $420,000. After deducting the amounts owed the Auditor and Lakeview, the Debtor believes that there is a maximum $80,209.39 in value reached by the Ciresi Mortgage against the Home, which amount does not include certain offsets, affirmative recoveries and defenses of the Debtor to said claim ("Ciresi Secured Claim").

Ciresi did not file a financing statement with the Ohio Secretary of State to perfect any security interest held or claimed to be held by either of them in the membership interests of PM3. No control agreement exists with respect to the membership units of PM3. Therefore Ciresi failed to properly perfect any lien or security interest in the membership interests of PM3.

**Treatment**

If ultimately an Allowed Secured Claim, the Ciresi Secured Claim will retain all its liens to the extent it is secured under 11 USC §506(d) that is $80,209.39 against the Home. The balance due on the and Allowed Claim for Ciresi Mortgage and Note will be treated as a general unsecured claim in Class 4.

The Ciresi Secured Claim it will bear interest at 2% per annum over the U.S. Prime Rate as published in the Wall Street Journal at https://www.wsj.com/market-data/bonds/moneyrates (as of the drafting of this Plan the effective interest rate would be 8.75%) and be repaid in 60 monthly installments of approximately 1,664.99, commencing on the 5th business day in the month following the Effective Date. The interest rate will be adjusted to the applicable U.S. Prime Rate on the last day of each calendar quarter, and the next and subsequent monthly payments adjusted to match the then current interest rate on the remaining part of the 60-month amortization. Upon the last payment on the Ciresi Mortgage and Note under this Plan the Debtor shall be entitled to file a satisfaction of the Ciresi Mortgage and Note with any agency where the Ciresi Mortgage is recorded.

The amounts due on the Pledge Agreement Note will be paid as a general unsecured claim in Class 5.

**If no holder of a Claim in Class 3 timely submits a ballot to accept or reject the Plan and does not otherwise object to the Plan, then Class 3 will be disregarded in the determination of whether all classes have accepted the Plan.**

**5.04 Class 4 – Class 4 –Disputed Secured Claims of Carson-- Impaired and entitled to vote on this Plan**

This Class consists of the secured claims of Carson.

Mr. Carson filed a UCC Financing Statement covering all assets of the Debtor, but the Debtor has no assets fitting the description in the UCC Financing Statement or there is no security agreement granting that security interest to Mr. Carson. The amounts due Mr. Carson will be paid as a general unsecured claim in Class 5.

**If no holder of a Claim in Class 4 submits a timely ballot to accept or reject the Plan and does not otherwise object to the Plan, then Class 4 will be disregarded in the determination of whether all classes have accepted the Plan.**

### 5.05 Class 5 – General Unsecured Claims -- Impaired and entitled to vote on this Plan

This class consists of the balance due Ciresi and Carson and other general unsecured claims. Based on filed and scheduled claims there are potentially 37 holders of Allowed Unsecured Claims who may have approximately $1,188,538.38 in Unsecured Claims in this class. This amount is not a statement by the Debtor that this amount will ultimately be the amount of Allowed Claims in this Class, as the Debtor reserves all rights and objections to any Claim in this Class.

**Treatment**

Allowed Claims in this class shall receive a pro rata share of the Debtor's actual Disposable Income from the Reorganized Debtor commencing on first business day that is 30 days after the last business day of the year in which the payment of Administrative Expenses provided for in Article 4:of this Plan, and Class 1 is paid in full occurs. Allowed Claims in this class will receive an annual pro rata Distribution from the Reorganized Debtor and in each calendar year thereafter until paid in full or the Plan reaches 3 years from the initial Distribution Date. No interest shall accrue on any Claims in this Class.

**If no holder of a Claim in Class 5 submits a timely ballot to accept or reject the Plan and does not otherwise object to the Plan, then Class 5 will be disregarded in the determination of whether all classes have accepted the Plan.**

## Article 6: Allowance and Disallowance of Claims

### 6.01 Delay of Distribution on a Disputed Claim; Effect on other Allowed Claims.

Except as otherwise provided in the Plan, no partial Plan payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution by Debtor of such dispute by settlement or Final Order. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims or classified classes of claims which are not disputed, but the amount of all distributions to all other Allowed Claims in a Class will be calculated on the highest potential liability for each Disputed Claim in a Class until resolved by a Final Order.

### 6.02 Settlement of Disputed Claims.

The Debtor or the Trustee will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

## Article 7: Provisions for Executory Contracts and Unexpired Leases

### 7.01 The Debtor assumes all executory contracts and unexpired leases as of the Effective Date of the Plan.

If no motion to assume and assign the Franchise Agreement is filed before confirmation of this Plan, the Franchise Agreement will be rejected by this Plan.

Except for any other executory contracts and unexpired leases that have been rejected, and if applicable assigned, either as of the Effective Date of this Plan, or that are the subject of a

pending motion to reject, or if applicable assign, the Debtor will be conclusively deemed to have assumed all executory contracts and unexpired leases as of the Effective Date.

## Article 8: Means for Implementation of the Plan and Post Confirmation Management of the Reorganized Debtor

### 8.01 Ordinary Business Income

The Plan will be primarily implemented and funded through the future salary of the Reorganized Debtor during the Plan Term. Prepetition the Debtor's salary was $50,000 with annual owner draws of approximately another $50,000. Pursuant to 11 U.S.C. § 1129(a)(5), it is disclosed that after the Petition Date the Debtor drew and will continue to draw a salary of $135,500 from PM3, and that such salary may be increased from time to time if PM3 operations warrant the increase.

### 8.02 Tax Refunds

If the Reorganized Debtor becomes eligible for tax refunds in future tax years during the term of this Plan, such refunds will first be used to reduce any post-petition tax liability due the applicable taxing authority liable for the refund, via offsets, then to reduce any Priority Tax Claim due the applicable taxing authority liable for the refund, via offsets, and then to make other payments under the Plan once such Priority Tax Claim is paid in full.

### 8.03 Future Financing

The Projected Disposable Income is not based on obtaining any third-party financing to implement the Plan but the Debtor, to the extent he is eligible for any funding or financial assistance, may seek such funding and/or assistance.

### 8.04 Sale of Assets

The Debtor may seek to sell his assets. So long as such a sale produces the same amount of the Projected Disposable Income due under this Plan on or before the final date of this Plan, and all Allowed Claims under this Plan will be paid in full from the proceeds of such sale no court approval of the sale or modification of this Plan shall be necessary. In the event the proposed sale will not pay all Allowed Claims in full the Debtor or the Trustee will seek court approval of such sale pursuant to 11 USC § 363. As a part of his reorganization, the Debtor does not contemplate the sale of any assets, however assets may be sold to the extent that it is later determined they are no longer of value to him or their useful life for the Reorganized Debtor has expired.

### 8.05 Prepayment of Claims

The Debtor or the Trustee may prepay any amount due or any Allowed Claim in whole or in part without penalty at any time after the Effective Date. Prepayments shall be applied first to interest actually due on the payment date and then to principal if the Debtor prepays any payments due to Priority Tax Claims, or Class 2 or 3 Allowed Claims.

### 8.06 Avoidance Actions

The Debtor does not believe there are any recoverable Avoidance Actions.

### 8.07 Post Confirmation Management

The Debtor will continue to manage his affairs after Confirmation of the Plan.

## Article 9: Confirmation of the Plan

### 9.01 Requirements for Confirmation of the Plan.

The Requirements for confirmation of the Plan are set forth in Sections 1126 and 1191 of the Bankruptcy Code.

### 9.02 Votes Necessary for a Class to Accept the Plan.

Voting on the Plan is tallied by Class. A Class of Claims accepts the Plan if both of the following occur: (i) the holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

**If no holder of a Claim in a Class of Claims eligible to vote timely submits a ballot to accept or reject the Plan and does not otherwise object to the Plan, then the applicable Class will be disregarded in the determination of whether all classes have accepted the Plan.**

### 9.03 Cramdown Confirmation Request

If one or more impaired classes of Claims and Interests fails to accept the Plan under Section 1126 of the Code, and if all the applicable requirements of Section 1129(a) of the Code, other than Section 1129(a)(8), (10), and (15) have been satisfied, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Sections 1129(b) and 1191(b) of the Code.

## Article 10: Default

If the Debtor shall fail to pay any amount due under this Plan when due, or if there exists some other non-monetary default under this Plan and if either such default is not cured after filing Notice and attesting to the Default and serving Debtor’s counsel, the Sub-Chapter V Trustee and the U.S. Trustee via email with a copy of the Notice of Default, the Debtor shall have thirty (30) days to cure the Default. If the Debtor fails to cure the default within thirty (30) days, then the US Trustee or any party in interest) may move in the Bankruptcy Court (1) for the reappointment of the Trustee to take control of the Debtor and the Debtor’s assets; or (2) conversion to Chapter 7 or dismissal of the Bankruptcy Case.

## Article 11: Vesting

All property of the estate will remain property of the Bankruptcy Estate and subject to the automatic stay under 11 U.S.C. §362 until the Court grants the Debtor a discharge, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. §§ 1141(b) and 1186, on granting of a Discharge, all property of the estate will vest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. § 1141(c), on Confirmation of the Plan, all property of the Debtor dealt with in the Plan, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will be free and clear of all Claims and Equitable Interests of the Debtor, except as otherwise provided in the Plan or the Confirmation Order.

## Article 12: General Provisions

### 12.01 Definitions and rules of construction.

Certain terms are defined elsewhere in this Plan as indicated by being in parenthesis, in bold type, underlined and in quotation marks. The definitions and rules of construction outlined in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**Administrative Claimant**: Any person entitled to payment of an Administrative Expense.

**Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of reserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**Administrative Tax Claim**: Any tax incurred according to Section 503(b)(1)(B) of the Bankruptcy Code.

**Allowed Claim**: Except as otherwise specified in this Plan, any claim against the Debtor according to Section 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**Allowed Priority Claim**: An Allowed Claim entitled to priority under Section 507 (other than an Administrate Expense, Administrative Tax Claim, or an Allowed Priority Tax Claim) and not subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Allowed Priority Tax Claim**: An Allowed Claim entitled to priority in payment under Section 507(a)(8) and not subject to subordination under Section 510 of the Bankruptcy Code reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Effective Date.

**Allowed Secured Claim**: Except as otherwise specified in this Plan, Allowed Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Section 506 of the Bankruptcy Code

**Allowed Unsecured Claim**: An Allowed Claim, that is not a Secured Claim and that is also not entitled to priority under Section 507 or subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**Avoidance Action:** Any claim or cause of action arising under any Sections 544, 547 or 548 of the Bankruptcy Code such as fraudulent transfers, preference actions and the like.

**Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Ohio.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**Bar Date.** The last day to timely file proofs of claim in this case as set by the Bankruptcy Court.

**Bankruptcy Case, Case or Chapter 11 Case.** The case in the Bankruptcy Court in which this Plan is filed *In re Jason Dicks*, Case No. 25-11336.

**Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**Class**: A category of holders of Claims or interests which are set forth in this Plan.

**Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan under the provisions of chapter 11 of the Bankruptcy Code.

**Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**Disallowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code that has been denied against the estate by a Final order; or for which no proof of claim has been Timely Filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Disposable Income**: Shall have that meaning ascribed to such term under Section 1191(d) of the Bankruptcy Code

**Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code for which: A proof of claim has been timely filed prior to the Bar Date or deemed filed, and the Debtor or another party in interest has filed an objection.

**Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**Distribution Date**: The first date after the Effective Date that a Distribution is made under the Plan to any holders of (1) Administrative Claims other than Administrative Claims accrued and

paid in the ordinary course of the Debtor's business prior to the Effective Date, or (2) Priority Tax Claims, or (3) Allowed Claims in a particular Class in accordance with this Plan.

**Effective Date** The first business day that is 14 days after the Confirmation Order becomes a Final Order. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**Equity Interest**: An ownership interest in the Debtor.

**Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) at stay pending appeal is in place and any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**Petition Date**: March 31, 2025, the date the chapter 11 petition for relief was filed by the Debtor.

**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Reorganized Debtor**: The Debtor after the Effective Date.

**Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**Section** a particular section of the Bankruptcy Code

**Trustee**: Patricia Fugee, the trustee appointed according to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the Confirmation Order.

**Timely Filed**: any proof claim or other document that was filed on or before the expiration of the time for such filing as specified by the Bankruptcy Code, the Bankruptcy Rules, the local rules or an order of the Bankruptcy Court.

**US Trustee**: The Office of the United States Trustee for Region IX or such successor office having responsibility for the Bankruptcy Case.

**12.02 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**12.03 Binding effect.**

The rights and obligations of any person or entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such person or entity.

**12.04 Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**12.05 Controlling effect.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and

any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### 12.06 Retention of Jurisdiction.

The Court shall retain jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

## Article 13: DISCHARGE

If the Debtor's Plan is confirmed under Section 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6).

If the Debtor's Plan is confirmed under Section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years or such other time not to exceed 5 years as the Court may fix of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan or such other time not to exceed 5 years fixed by the Court, or as otherwise provided in Section 1192.

Under this Plan the Debtor will be discharged under 1101(a) or (b) from all debts except for Allowed Claims in where any payment due extends beyond the final payment due under this Plan which holder of Claims is those Classes shall have the right to seek payment against the Reorganized Debtor for the amount due them.

## Article 14: REPORTING, PAYMENTS AND TRUSTEE OBLIGATIONS

The Debtor shall make all Distributions to Creditors provided for in the Plan whether confirmed under Section 1192(a) or (b), and the following shall apply:

### 14.01 US Trustee Reporting.

The Debtor shall file with the court Quarterly Post Confirmation Operating Reports ("**Quarterly Reports**") as required by the US Trustee no later than 20 days after the end of each quarter after the Effective Date or at such times as designated by the US Trustee until all Distributions are completed under the Plan.

### 14.02 Payments and Distributions to Disputed Claims.

Except as otherwise provided in the Plan, no partial Plan payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution by Debtor of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a Distribution until all claims within the applicable class are final. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is

resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims or classified classes of claims which are not disputed. The amount of any Distribution that would otherwise be due on a Disputed Claim shall be held in a designated distribution account pending final resolution of said Disputed Claim.

**14.03 Right to Accelerate Payment.**

The Debtor may pay any Allowed Claim prior to the projected payment date in whole or in full without penalty.

**14.04 Discharge of Trustee.**

Whether the Plan is confirmed under Section 1191(a) or under Section 1191(b) of the Bankruptcy Code, the Trustee shall not be discharged from her duties, as limited below, until after the completion of all payments due under the Plan, at which point the V Trustee shall file a Final Report and account seeking to be discharged of her duties.

The Trustee's post-confirmation duties shall be limited to the following:

1) Assure that the debtor commences payments under the confirmed Plan;
2) Participate in any hearing on modification of the Plan after confirmation;
3) Provide information requested by a party in interest;
4) File post-confirmation reports as necessary or as Ordered by the Court;
5) File a Final Report.

**14.05 Post-Confirmation Fees and Expenses of the Subchapter V Trustee.**

The Trustee will not be required to obtain Court approval to pay such fees which fees may be paid without Court approval. Annually the Trustee will provide notice of the post confirmation costs utilizing the Court's negative notice procedures upon fourteen (14) days' notice to the Debtor, the Office of the United States Trustee, and all claimholders. In the event of any objection to the Trustee's fees, the Court shall retain jurisdiction to hear such dispute. Upon Court approval of the Trustee's fees and expenses, the Debtor shall pay any such unpaid fees and expenses no earlier than 14 business days after such Court Order. The Trustee's fees shall be an Administrative Claim and paid as payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor pursuant to Section 1191(d)(2) and thus deducted from the Debtor's income prior to the calculation of Disposable Income.

**14.06 Trustee Obligations Related to the Pursuit of Causes of Action or Disputed Claims.**

The Trustee shall not have any obligation to pursue or manage the Debtor's retained Causes of Action or Disputed Claims, which Causes of Action and Disputed Claims shall remain the sole obligation of the Debtor.

## Article 15: LENGTH OF PLAN

The Projected Disposable Income under this Plan shall be calculated over a period of 60 months, commencing on the initial Distribution Date. However, the Plan term shall be the earlier of (1) 60 months after the initial Distribution Date or (2) the final Distribution is made under the Plan.

## Article 16: TAX CONSEQUENCES OF PLAN

The Plan and the resulting tax consequences may be complex, and the tax consequences of the Plan will depend upon certain factual determinations. No ruling has been or will, before the Effective Date, be requested from the Internal Revenue Service regarding the tax consequences of the Plan. No assets of the Debtor have been sold or transferred since the filing of this case and as a result, no tax consequences as to such assets have arisen since the filing of this case.

**BECAUSE THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND MAY VARY BASED ON INDIVIDUAL CIRCUMSTANCES THIS DISCLOSURE STATEMENT RENDERS NO TAX ADVICE ON THE TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO ANY PARTICULAR CREDITOR, TO THE DEBTOR, OR TO INTEREST HOLDERS. EACH PARTY IS URGED TO CONSULT HIS OR HER TAX ADVISOR AS TO THE TAX CONSEQUENCES OF THE PLAN TO HIM OR HER INCLUDING ANY CONSEQUENCES UNDER STATE OR LOCAL TAX LAWS**.

The following constitutes a summary of the potential tax consequences which may arise upon confirmation of the Plan.

### 16.01 Tax Consequences to the Debtor.

The Debtor is an individual. However, under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("COD Income") realized during the taxable year, which generally includes the amount of principal debt discharged and any interest that has been previously accrued and deducted for tax purposes but remains unpaid at the time the indebtedness is discharged. The Tax Code permits a debtor in bankruptcy to exclude his COD Income from gross income but requires the debtor to reduce certain tax attributes by the amount of the excluded COD income. The Debtor will likely realize a significant amount of COD income upon the consummation of the Plan. The Debtor will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtor is under the jurisdiction of a court in a Title 11 case.

### 16.02 Certain U.S. Federal Income Tax Consequences to Holders of Claims and Equity Interests

The U.S. Federal Income Tax consequences to holders of allowed claims arising from the Distributions to be made in satisfaction of their claims under a bankruptcy plan of reorganization may vary, depending upon, among other things: (a) the type of consideration received by the holder of a claim in exchange for the indebtedness it holds; (b) the nature of the indebtedness owed to it; (c) whether the holder has previously claimed a bad debt or worthless security deduction in respect of its claim against the corporation; (d) whether such claim constitutes a security; (e) whether the holder of a claim is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the holder of a claim reports income on the accrual or cash basis; and (g) whether the holder of a claim receives Distributions under the bankruptcy plan in more than one taxable year. For tax purposes, the modification of a claim may represent an exchange of the claim for a new claim, even though no actual transfer takes place. Also, where a gain or loss is recognized by the holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by several factors, including the tax status of the holder,

whether the claim constitutes a capital asset in the hands of the holder and how long it has been held or is treated as having been held, whether the claim was acquired at a market discount, and whether and to what extent the holder previously claimed a bad debt deduction for the underlying claim.

**Internal Revenue Service Circular 230 Notice**: To ensure compliance with Internal Revenue Service Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests to avoid penalties that may be imposed on them under the Internal Revenue Code; (B) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein, and (C) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.

Dated: February 23, 2026 Jason Dicks, Debtor and Debtor in Possession

*/s/ Jason Dicks*

Jason Dicks

# Exhibit A
# Liquidation Analysis

| Asset | Liquidation Value | Less Liens and Exemption | Net CH 7 Liquidation Value |
|---|---|---|---|
| Cash | $ 1,000.00 | | $ 1,000.00 |
| Home | $ 420,000.00 | $ 489,791.61 | $ - |
| Ford Truck | $ 20,434.00 | $ 28,611.38 | $ - |
| 2007 Victory | $ 2,500.00 | | $ 2,500.00 |
| Rice Trailer | $ 1,750.00 | | $ 1,750.00 |
| **NET** | | | **$ 5,250.00** |
| | | **Less** | |
| | | Trustee Fee | $ 1,275.00 |
| | | Precent to Unsecured Creditors | 0.00% |

# Exhibit B
# Projected Disposable Income

| | Month-1 | Month-2 | Month-3 | Month-4 | Month-5 | Month-6 | Month-7 | Month-8 | Month-9 | Month-10 | Month-11 | Month-12 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GROSS PAY | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 11,291.67 | $ 108,000.00 | $ 108,000.00 | $ 108,000.00 | $ 108,000.00 |
| | | | | | | | | | | | | | | | | |
| Federal Income Tax | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (1,838.21) | $ (22,058.50) | $ (22,058.50) | $ (22,058.50) | $ (22,058.50) |
| Ohio State Tax | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (338.75) | $ (4,065.00) | $ (4,065.00) | $ (4,065.00) | $ (4,065.00) |
| Social Security | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (700.08) | $ (8,401.00) | $ (8,401.00) | $ (8,401.00) | $ (8,401.00) |
| Medicare | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (163.73) | $ (1,964.75) | $ (1,964.75) | $ (1,964.75) | $ (1,964.75) |
| TOTAL TAX EXPENSE | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (27,243.00) | $ (27,243.00) | $ (27,243.00) | $ (27,243.00) |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| NET PAY | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 8,250.90 | $ 99,010.75 | $ 99,010.75 | $ 99,010.75 | $ 99,010.75 |
| ESTIMATED EXPENSES | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| EXPENSE | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | ANNUAL | ANNUAL | ANNUAL | ANNUAL |
| Mortgage | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 3,033.01 | $ 36,396.12 | $ 36,396.12 | $ 36,396.12 | $ 36,396.12 |
| Home Maintenance | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 3,600.00 | $ 3,600.00 | $ 3,600.00 | $ 3,600.00 |
| Homeowner's insurance (included in mortgage payment) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Real Estate Tax (included in mortgage payment) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Electricity | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 180.00 | $ 2,160.00 | $ 2,160.00 | $ 2,160.00 | $ 2,160.00 |
| Heating Wood | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 |
| Home Internet | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 29.99 | $ 359.88 | $ 359.88 | $ 359.88 | $ 359.88 |
| Trash removal | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 19.99 | $ 239.88 | $ 239.88 | $ 239.88 | $ 239.88 |
| | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Food | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| Clothing | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| Personal Care | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 960.00 | $ 960.00 | $ 960.00 | $ 960.00 |
| Transportation/fuel | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 |
| Entertainment and recreation | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 |
| Automobile maintenance | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| Automobile Insurance | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 165.60 | $ 1,987.20 | $ 1,987.20 | $ 1,987.20 | $ 1,987.20 |
| Automobile Payment | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 706.74 | $ 8,480.88 | $ 8,480.88 | $ 8,480.88 | $ 8,480.88 |
| | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TOTAL EXPENSES | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 5,815.33 | $ 69,783.96 | $ 69,783.96 | $ 69,783.96 | $ 69,783.96 |
| Net Income | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 2,435.57 | $ 29,226.83 | $ 29,226.83 | $ 29,226.83 | $ 29,226.83 |
| | | | | | | | | | | | | | | | | $ - |
| Ciresi Secured Claim | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 1,664.99 | $ 19,979.88 | $ 19,979.88 | $ 19,979.88 | $ 19,979.88 |
| IRS | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 213.14 | $ 2,557.68 | $ 2,557.68 | $ 2,557.68 | |
| Admin Exp | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 557.44 | $ 6,689.27 | $ 6,689.27 | $ 6,689.27 | $ 9,246.95 |