| | |
|---|---|
| IN RE: | CASE NO.   25-11336 |
| JASON DICKS, | CHAPTER   11 |
| Debtor. | SUBCHAPTER V |
| | JUDGE JESSICA PRICE SMITH |

### OBJECTION TO CONFIRMATION OF JASON DICKS'S PLAN OF REORGANIZATION DATED FEBRUARY 23, 2026

Now come creditors Joesph T. Ciresi, Cassie Ciresi, and Zeppe's Tavern Franchise LLC (collectively, the "Zeppe's Parties"), by and through their undersigned counsel, and object (the "Objection") to confirmation of *Jason Dicks's Plan of Reorganization Dated February 23, 2026* (the "Plan") [Docket No. 120], filed by Jason Dicks (the "Debtor"). In support of the Objection, the Zeppe's Parties state as follows:

### BACKGROUND FACTS

1. On February 23, 2023, the Debtor entered into a Membership Interest Purchase Agreement with Joseph T. Ciresi (the "MIPA") pursuant to which the Debtor agreed to purchase from Mr. Ciresi and Mr. Ciresi agreed to sell to the Debtor, 100% of the membership interests in Pizzeria Management III, LLC ("PMIII") for the total amount of $575,000 (the "Purchase Price"). The Debtor agreed to pay the Purchase Price as follows:  (a) payment of $100,000 in cash at the closing; (b) the Debtor's execution and delivery of a mortgage note in the amount of $150,000 secured by a mortgage on the Debtor's residence (the "Mortgage Note"); and (c) the Debtor's execution and delivery of a promissory note in the amount of $325,000 (the "Note") secured by a

pledge of the Debtor's membership interests in PMIII and a security interest in all of PMIII's assets.

2. To secure the Debtor's obligations to Mr. Ciresi under the Mortgage Note, the Debtor executed a mortgage in favor of Mr. Ciresi upon the Debtor's residence located at 13910 Claridon Troy Road, Burton, OH (the "Home"). To secure the Debtor's obligations under the Note, the Debtor executed and delivered a (i) Pledge Agreement pursuant to which the Debtor granted to Mr. Ciresi a security interest in the Debtor's membership interests in PMIII and (ii) a Security Agreement (which was also executed by PMIII) pursuant to which the Debtor and PMIII granted to Mr. Ciresi a security interest in all of PMIII's assets (the "Security Agreement"). In conjunction with the Pledge Agreement, the Debtor also executed and delivered to Mr. Ciresi an Assignment of Membership Interests assigning the Debtor's membership interests in PMIII to Mr. Ciresi (the "Assignment", and collectively with the MIPA, the Mortgage Note, the Note, the Pledge Agreement and the Security Agreement, the "Purchase Documents"). A true and correct copy of the Pledge Agreement and the Assignment is attached hereto as **Exhibit A**.

3. In addition, pursuant to the terms of the MIPA, Mr. Ciresi agreed to assign the lease (the "Lease") for the premises located at 11110 Kinsman Road, Newbury Township, Ohio 44065 (the "Premises") to the Debtor subject to the Landlord's consent and the Debtor agreed to accept and comply with the covenants, obligations and promises in the Lease. As a result, PMIII executed a Third Amendment to Lease (the "Lease Amendment") with Newbury Center LLC (the "Landlord") acknowledging that ownership in PMIII changed from Mr. Ciresi to the Debtor. The Lease Amendment incorporates the terms of that certain Agreement with Landlord by and between the Debtor and Landlord (the "Landlord Agreement") and increased the amount of the security

deposit under the Lease. A true and correct copy of the Lease Amendment and the Landlord Agreement is attached hereto as **Exhibit B**.

4. The Debtor also signed a Franchise Agreement with Zeppe's Tavern Franchise LLC ("Zeppe's") which sets forth the Debtor's rights and obligations related to the operation of a Zeppe's tavern restaurant at the Premises by PMIII (the "Franchise Agreement").[1]

5. The Note matured and a balloon payment in the amount of $314,257.65, was to be paid to Mr. Cireci, on April 1, 2025.

6. On June 30, 2025, the Debtor filed his first proposed subchapter V plan of reorganization (the "First Plan") [Docket No. 39] which drew objections from the United States Trustee (the "UST's First Objection") [Docket No. 61], iPlan Group FBO Christian Carson [Docket No. 64] and the Zeppe's Parties [Docket No. 65].

7. On November 20, 2025, the Debtor filed his second proposed subchapter V plan of reorganization (the "Second Plan") [Docket No. 80] which drew objections from the United States Trustee (the "UST's Second Objection") [Docket No. 86]

8. On December 9, 2025, the Debtor filed his third proposed subchapter V plan of reorganization (the "Third Plan") [Docket No. 94] which drew objections from United States Trustee (the "UST's Third Objection") [Docket No. 104] and the Zeppe's Parties [Docket No. 107].

9. Following the objections to the Third Plan, Debtor filed the *Certification and Summary Report of Ballots on Jason Dicks's Plan of Reorganization Dated December 9, 2025 [Doc 94]* (the "Voting Certification") [Docket No. 105], and the *Debtor's Brief in Support of*

---

[1] Due to the voluminous nature of the Franchise Agreement and concerns regarding confidentiality, the Franchise Agreement is not attached to the Objection. However, the Franchise Agreement will be made available upon request following entry of a mutually agreeable protective order.

*Confirmation of Jason Dicks's Plan of Reorganization Dated December 9, 2025 [Doc. 94] and Response to Objections to Confirmation* ("Debtor's Brief") [Docket No. 111] responding to the objections to the Third Plan.

10. The Voting Certification indicated that Class 3, the Zeppe's Parties, and Class 5, general unsecured creditors, voted to reject the Third Plan.

11. On February 24, 2026, the Debtor filed the Plan, with changes to any preceding plan appearing in redline. The Zeppe's Parties hereby submit this Objection to the Plan and the terms contained therein.

## OBJECTIONS TO CONFIRMATION OF THE PLAN

### I. THE PLAN IS NOT FAIR AND EQUITABLE

12. The Plan provides for payment of only the Debtor's actual income generated during the length of the Plan and not his Projected Disposable Income, as defined by 11 U.S.C. § 1191(d). *See*, Plan, Article 1.06 and Article 5.05 ("Allowed Claims in this class shall receive a pro rata share of the Debtor's actual Disposable Income from the Reorganized Debtor…").

13. As the Voting Certification demonstrates, more than one impaired class of claims has voted to reject confirmation of the Plan. Therefore, Debtor must proceed to "cram" confirmation pursuant to section 1191(b), and the applicable provisions in section 1129(b).

14. The Zeppe's Parties are impacted and have standing to challenge this alleged treatment of Class 5 because of Debtor's treatment of claims held by the Zeppe's Parties. *See*, Plan, 5.02 ("[t]he balance due on the and Allowed Claim for Ciresi Mortgage and Note will be

treated as a general unsecured claim in Class 4[2] … [t]he amounts due on the Pledge Agreement Note will be paid as a general unsecured claim in Class 5").[3]

15. In order to confirm a Subchapter V plan over objection, the Court must find that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under and has not accepted the plan. *See,* 11 U.S.C. § 1191(b).

16. For a Subchapter V plan to be "fair and equitable" with respect to a class of general unsecured creditors the plan must provide that all of the projected disposable income of the debtor to be received during the length of the plan will be applied to make payments under the plan or the value of the property distributed under the plan is not less than the projected disposable income of the debtor. *See*, 11 U.S.C. § 1191(c)(2)(A) & (B).

17. In order to be "fair and equitable" the Plan must pay, pledge to pay, or distribute to creditors at least $54,865.20, which is Debtor's disclosed Projected Disposable Income. *See, In re Premier Glass Servs., LLC,* 664 B.R. 465, 471 (Bankr. N.D. Ill. 2024) ("***[i]f the debtor's actual income is lower than projected, the debtor must nonetheless pay the full amount as projected in the plan***") (***emphasis added***); *In re Nelkin & Nelkin P.C.*, 662 B.R. 550, 565 (Bankr. S.D. Tex. 2024) ("In other words, a plan must commit the debtor's projected disposable income or pledge other payments having a present value of at least that amount") (citing, *Legal Serv. Bureau, Inc. v. Orange Cty. Bail Bonds, Inc. (In re Orange Cty. Bail Bonds, Inc.)*, 638 B.R. 137, 146 (B.A.P. 9th Cir. 2022)); *In re Packet Constr., LLC*, 672 B.R. 905, 910 (Bankr. W.D. Tex. 2024).

---

[2] While this language indicates that the Allowed Claim for Ciresi Mortgage and Note will be treated in Class 4, which is reserved for the Disputed Secured Claims of Carson, it is assumed that this is merely a typographical error, and Debtor meant that it was to be treated with Class 5 and other general unsecured creditors.

[3] This is not an admission as to the validity and correctness of this treatment of any claims held by the Zeppe Parties in this case.

5

18.     In response to the objections that the Third Plan was not fair and equitable, Debtor's Brief states that Debtor will demonstrate, at the confirmation hearing, that the amount to be distributed under the Plan will exceed the Debtor's projected disposable income. *See*, Brief, pp. 15-16.

19.     Debtor's monthly operating reports filed in this proceeding demonstrate that Debtor's actual disposable income, without considering issues related to the Franchise Agreement and the Lease detailed below, will not permit Debtor to contribute an amount at least equal to Debtor's projected disposable income:

| | |
|---|---|
| April 2025 [Docket No. 32] | $ 2,547.56 |
| May 2025 [Docket No. 37] | No MOR – court permitted removal from docket for lack of redaction |
| June 2025 [Docket No. 49] | ($    77.26) |
| July 2025 [Docket No. 59] | $ 1,878.49 |
| August 2025 [Docket No. 60] | $ 1,649.61 |
| September 2025 [Docket No. 75] | $ 1,649.61 |
| October 2025 [Docket No. 84] | ($3,301.74) |
| November 2025 [Docket No. 103] | ($    33.93) |
| December 2025 [Docket No. 106] | ($3,318.13) |
| January 2026 [Docket No. 116] | $ 2,217.05 |
| February 2026 [Docket No. 131] | ($ 1,364.51) |
| Net | $ 1,846.75 |
| *Average Monthly Net* | *$    184.68* |
| *Average Monthly Net over 60 months* | *$11,080.80* |

## II. THE PLAN IS NOT FEASIBLE

20.     In order for a Subchapter V plan to be feasible it requires either: the debtor will be able to make the plan payments; or there is a reasonable likelihood that the debtor will be able to make all payments under the plan and there are appropriate remedies in the event that payments are not made. *See*, 11 U.S.C. § 1191(c)(3)(A) & (B).

6

A. <u>Treatment of Franchise Agreement</u>

21.      The Plan states that, "[i]f no motion to assume and assign the Franchise Agreement is filed before confirmation of this Plan, the Franchise Agreement will be rejected by the Plan." *See,* Plan, Article 7.01.

22.      The Brief, in response to objections to the Third Plan, stated that if the Franchise Agreement were assumed "it would obviously be immediately assigned to [PMIII]". *See,* Brief, p. 17.

i. <u>Assumption of Franchise Agreement</u>

23.      The Franchise Agreement cannot be assumed. The Bankruptcy Code prevents assumption of any executory contract that is in default, unless it is cured, provides adequate assurances of compensation of any loss, or provides adequate assurance of future performance under the contract. *See*, 11 U.S.C. § 365(b)(1); *In re Rachels Industries, Inc.*, 109 B.R. 797, 811 (Bankr. W.D. Tenn. 1990); *In re DWE Screw Prods.*, 157 B.R. 326, 332 (Bankr. N.D. Ohio).

24.      Under the Franchise Agreement, Debtor must pay four percent (4%) of gross sales of Debtor's Franchised Business each week. *See*, Franchise Agreement, Section 4.2. If Debtor does not pay royalties due under the Franchise Agreement on the date established by the Franchise Agreement, the Debtor must pay the outstanding amount overdue and interest on the overdue amount at the rate of eighteen percent (18%) per annum. *See*, Franchise Agreement 4.5.

25.      Debtor has not paid any of the royalty payments under the Franchise Agreement since the Petition Date and cannot assume the Franchise Agreement without curing or providing adequate assurances of any loss or future performance under the Franchise Agreement. As of the filing of this Objection, the sum of $28,147.78 is due and owing to Zeppe's Tavern Franchise LLC for post-petition Deferred Royalties. *See*, Account Statement attached hereto as **<u>Exhibit C</u>.**

ii. Assignment of the Franchise Agreement

26.     The Franchise Agreement is not assignable. Section 365(c)(1) of the Bankruptcy Code prevents the assignment of executory contracts if the applicable law excuses the other party from accepting the performance from accepting the performance of the other party and such pay does not consent to the assumption or assignment. *See, Welcome Grp. 2, LLC*, 660 B.R. 874, 885 (Bankr. S.D. Ohio 2024).

27.     Contracts that specifically indicate that a contract is one of personality, contracts with language which indicate the personality of the parties is material are not assignable. *In re Magness*, 972 F.2d 689, 696 (6th Cir. 1992).

28.     The following language of the Franchise Agreement indicates that the Franchise Agreement is one of personality and cannot be assigned without the consent of the franchisor.

(a)     "You understand and acknowledge that the rights and duties set forth in this Agreement ***are personal to you, and that we have granted this franchise in reliance on your (or your Principals') business skill, financial capacity, and personal character***." *See,* Franchise Agreement, Section 16.4 (***emphasis added***);

(b)     The term "transfer" means any assignment in this Agreement, You, and/or any or all your rights and/or obligations under this Agreement. *See,* Franchise Agreement, Section 16.4.1.1.[4]

(c)     Any purported assignment without the prior written consent of the franchisor will immediately terminate this Agreement without opportunity to cure. *See*, Franchise Agreement, Section 16.4.1.2.

29.     The Franchise Agreement cannot be assigned to PMIII without the written consent of the franchisor. Further, any attempted assignment would render the Franchise Agreement non-assumable.[5] *See also,* Franchise Agreement, Section 17.2.5 ("If you or any of your Principals

---

[4] Franchise Agreement lists Jason Dicks personally and not PMIII. *See,* Franchise Agreement, p. 72.

[5] *See*, *Welcome Grp. 2, LLC,* 660 B.R. at 881 (courts that employ the "actual test" hold that assumption is prohibited only where the debtor expresses an actual intent to assign the contract to a party to whom the non-debtor could refuse performance).

8

purport to transfer any rights or obligations under this Agreement or any interest to any third party in a manner [contrary to the terms of this Franchise Agreement]"). Debtor's Brief expressed an actual intent to assign the Franchise Agreement. *See*, Brief, p. 17 ("If the Franchise Agreement were to be assumed it would obviously be immediately assigned to [PMIII] as that is the actual entity operating the Newberry Tavern").

B. <u>Treatment of the Lease</u>

30.    The Debtor has not moved to assume the Lease, and therefore it is automatically rejected.

31.    In a Subchapter V case, an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the debtor shall immediately surrender that nonresidential real property to the lessor, if the debtor does not assume or reject the unexpired lease by the earlier of: 120 days after the date of filing the petition; or the date of entry of an order confirming a plan. *See*, 11 U.S.C. § 365(d)(4)(A). This section applies in Subchapter V cases. *See, In re Ashmark Construction, LLC,* unreported, case number 25-46693, 2025 WL 2993222 (Bankr. E.D. Mich. 2025) (Subchapter V debtor's motion to extend deadline to assume or reject a non-residential real property lease rejected); *In re Vital Pharms., Inc.*, 651 B.R. 847, 852 (Bankr. S.D. Fla. 2023) (Chapter 11 cases that do not elect to proceed under Subchapter V are not entitled to the extension to 210-day period, rather than a 120-day period, to assume or reject a lease as that extension only applied to Subchapter V bankruptcies filed before December 27, 2022).

32.    The Petition Date for this case is March 31, 2025. The 120-day period during which Debtor was required to assume the Lease ended on July 29, 2025, and therefore the Lease is rejected as a matter of law.[6]

---

[6] Neither Debtor, nor PMIII in its own bankruptcy case, Case Number 25-11334, have moved to assume the Lease.

33. There is no reasonable likelihood that Debtor will make Plan payments without the Franchise Agreement and the Lease for the premises from which Debtor's only source of income is derived.

34. The Liquidation Analysis states that there is a net Chapter 7 value, after accounting for liens and exemptions, of $5,250. Therefore, there are not adequate remedies available to creditors if Debtor does not make payments under the Plan.

## III. FAILURE TO ACCOUNT FOR ADMINISTRATIVE EXPENSES

35. As detailed above, the Franchise Agreement requires that the Debtor pay deferred royalites which have been continuing to accrue post-petition.[7]

36. The Plan provides for no treatment of these royalties which are entitled to be paid as an administrative expense, and the lack of treatment for these administrative expenses require that confirmation must be denied. *See*, 11 U.S.C. § 1129(a)(9)(A) (with respect to claims of the kind specified in section 507(a)(2), administrative expenses allowed under section 503(b), the holder of such claim receives the amount of such claim equal to the amount of the claim).

37. The Bankruptcy Code provides for the allowance of an administrative expense for the "actual, necessary costs and expenses for preserving the estate including…". *See*, 11 U.S.C. § 503(b)(1)(A); *Mediofactoring v. McDermott (In re Connolly N. Am., LLC)*, 802 F.3d 810, 816 (6th Cir. 2015) (the type of costs and expenses listed in section 503(b) is not exhaustive when Congress choses to use the wording "including").

---

[7] Contemptuously with this Objection, the Zeppe Tavern Franchise LLC is filing a *Motion for Allowance of Administrative Claim* further supporting the allowance of an administrative claim for the Deferred Royalties.

38.     All of these obligations became due and owing post-petition, the continued use of the rights under the Franchise Agreement benefitted the estate and were necessary and incident to the continued operation of Debtor's solely owned business. As one bankruptcy court has stated:

> The Sixth Circuit has said in *Sunarhauserman:* "*Reading* does not eliminate the requirement that a debt arise post-petition in order to be accorded administrative expense priority." But the converse is equally true—that if it is clear that a debt did arise postpetition, then *Reading* requires that it be treated as an administrative expense so long as the expense is "ordinarily incident" to the operation of the postpetition business.

*Richardson v. Mich. Bell Tel. Co. (In re Lucre, Inc.)*, 434 B.R. 807, 821 (Bankr. W.D. Mich. 2010).

## **CONCLUSION**

Based on the foregoing, the Zeppe's Parties respectfully request that confirmation of the Plan be denied. Contemporaneously with this Objection, the Zeppe's Parties are filing the *Motion to Convert or Dismiss Case* requesting that the Court either convert Debtor's case to Chapter 7 or dismiss Debtor's case whichever is in the best interest of creditors.

Dated: April 6, 2026                                    Respectfully submitted,


                                                        */s/ John J. Rutter*
                                                        John J. Rutter (0079186)
                                                        Christopher M. Millard (0105607)
                                                        Roetzel & Andress, LPA
                                                        222 South Main Street, Suite 400
                                                        Phone: (330) 376-2700
                                                        Fax: (330) 376-4577
                                                        jrutter@ralaw.com
                                                        cmillard@ralaw.com

                                                        *Attorneys for the Zeppe's Parties*

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, a true and correct copy of the *Objection to Confirmation of Jason Dicks's Plan of Reorganization Dated February 23, 2026*, was served upon the following in the manner indicated:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- **Christian E Carson**     christian@carsonlaw.com
- **Thomas W. Coffey**     tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com
- **Daniel J. Feko**     dfeko@simonattys.com, simondocket@simonattys.com
- **Patricia B. Fugee**     patricia.fugee@fisherbroyles.com, cpbf11@trustesolutions.net
- **Spencer Lutz**     spencer.lutz@usdoj.gov
- **James Eric Rottinghaus**     cnbkecf@tblaw.com, jrottinghaus@ecf.courtdrive.com
- **John J. Rutter**     jrutter@ralaw.com
- **Frederic P. Schwieg**     fschwieg@schwieglaw.com
- **United States Trustee**     (Registered address)@usdoj.gov

*/s/ John J. Rutter*
John J. Rutter (0079186)

## MEMBERSHIP INTEREST PLEDGE AGREEMENT

THIS MEMBERSHIP INTEREST PLEDGE AGREEMENT (this "**Agreement**") is made effective on February 23, 2023, by and between Jason Dicks, an individual with an address of 13910 Claridon Troy Road, Burton, Ohio 44021 (**Pledgor**"), and Joseph T. Ciresi, an individual with an address of 25780 Miles Road, Suite A, Bedford Heights, Ohio 44146 ("**Secured Party**").

WHEREAS, Pledgor and Secured Party, among others, are parties to that certain Membership Interest Purchase Agreement of even date herewith ("Purchase Agreement"), whereby Secured Party has agreed to sell to Pledgor, and Pledgor has agreed to purchase and redeem from Secured Party, membership interest units in Pizzeria Management III LLC, an Ohio limited liability company (the "Company"), equal to a 100% interest in the Company (the "Units");

WHEREAS, Pledgor has agreed to pay the purchase price for the Units by delivering to Secured Party a Promissory Note of even date herewith, in the principal amount of Three Hundred Twenty Five Thousand and 00/100 Dollars ($325,000.00) (the "**Note**"); and

WHEREAS, in order to secure Pledgor's obligations under the Note, Pledgor has agreed to pledge and grant to Secured Party a security interest in, and lien on, the Units, pursuant to the terms and conditions of this Agreement.

THEREFORE, for valuable consideration received, the parties agree as follows:

Grant of Security Interest. Subject to Applicable Law (as defined below), as security for the prompt and complete payment and performance when due of all liabilities, obligations or indebtedness owing by Pledgor to Secured Party under the Note (collectively, the "**Obligations**"), Pledgor pledges and grants to Secured Party a continuing security interest in, and lien on, the Units. For so long as the Units consist of an uncertificated security or a security in book entry form, Pledgor shall reasonably cooperate in perfecting Secured Party's security interest thereon in accordance with Applicable Law.

Delivery of Transfer Powers. Concurrent with the execution of this Agreement, Pledgor shall deliver to Secured Party an undated assignment duly executed in blank transferring the Units to Secured Party, subject to Applicable Law, substantially in the form attached hereto as Exhibit A. In the event that Pledgor should ever acquire or receive certificates, securities, instruments or other documents evidencing the Units, Pledgor shall deliver to and deposit with Secured Party in pledge, all such certificates, securities, instruments or other documents that evidence the Units, together with undated assignments, instruments or other documents signed in blank by Pledgor.

Dividends and Distributions. Upon an Event of Default (as such term is defined in the Note), any and all dividends and distributions that may be made or due, or may become due, in respect of the Units, shall be distributed to Secured Party, subject to Applicable Law.

Voting and Other Rights. Upon an Event of Default, subject to Applicable Law, Secured Party shall have the right to exercise any and all voting rights in respect of the Units on any company matter.

18324227v1

Covenants and Warrants. Pledgor covenants that, until the Obligations have been Paid-in-Full (as defined below), Pledgor shall not sell, convey or otherwise dispose of any of the Units or any interest therein, or create, incur or permit to exist any pledge, mortgage, lien, charge, encumbrance or any security interest whatsoever in or with respect to any of the Units except for those created hereby and by those created in connection with the other transactions contemplated under the Purchase Agreement. Pledgor warrants, at Pledgor's expense, that Pledgor will defend Secured Party's right, title, and security interest in and to the Units against the claims of any person.

Other Rights with Respect to the Units. In addition to all other rights with respect to the Units granted to Secured Party hereunder, at any time and from time to time, during the continuation of an Event of Default, Secured Party, at its option, subject to Applicable Law, and at the expense of Pledgor, may (a) transfer into its own name all or any part of the Units, thereafter receiving in such name any dividends, income or other distributions upon the Units to which Secured Party may be entitled; (b) take control of and manage all or any of the Units; (c) apply to the payment of any of the Obligations, whether any be due and payable or not, any moneys, including cash dividends, distributions and other income from any Units, now or hereafter in the hands of Secured Party, on deposit or otherwise, belonging to Pledgor, as Secured Party in its sole discretion shall determine; and (d) do anything that Pledgor is required but fails to do hereunder.

Event of Default; Remedies. Upon the occurrence of an Event of Default, Secured Party, in its sole and absolute discretion, shall have the right to exercise any rights or remedies provided by law, including, without limitation, the rights and remedies of a secured party under the Ohio Revised Code, as amended from time to time (the "**Code**").

Application of Proceeds upon Disposition of Units. Any cash dividend or distribution received by Secured Party and the proceeds of any disposition of the Units by Secured Party shall be applied as follows:

1.  first, to the costs and expenses incurred in connection with enforcing this Agreement or incidental thereto or to the care or safekeeping of any of the Units or in any way relating to Secured Party's rights, including reasonable attorneys' fees and legal expenses;
2.  second, to the satisfaction of the Obligations;
3.  third, to the payment of any other amounts required by Applicable Law; and
4.  fourth, to Pledgor to the extent of any surplus proceeds.

Secured Party's Duties. The powers conferred on Secured Party hereunder are solely to protect its interest in the Units and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Units in its possession and the accounting for moneys actually received by it hereunder, Secured Party shall have no duty as to the Units or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to the Units.

Further Assurances. Prior to or concurrently with the execution of this Agreement, and thereafter at any time and from time to time upon the reasonable request of Secured Party, Pledgor shall execute and deliver to Secured Party all financing statements, continuation financing statements, collateral assignments, certificates and documents of title, affidavits, reports, notices, schedules of account, letters of authority, further pledges, powers of attorney and all loan

documents (collectively, the "**Security Documents**") that Secured Party may reasonably request, in form and substance reasonably satisfactory to Secured Party, and take such other actions that Secured Party may reasonably request, to perfect and continue perfected and to create and maintain the first priority status of Secured Party's security interest in the Units and to fully consummate the transactions contemplated under this Agreement.

Continuing Security Interest. This Agreement shall create a continuing security interest in the Units and shall remain in full force and effect until the Obligations are Paid-in-Full. Except as otherwise provided in the Note, when the Obligations have been Paid-in-Full, the security interests granted herein shall automatically terminate and all rights to the Units shall revert to Pledgor. Upon any such termination, Secured Party will, at Pledgor's expense, promptly execute and deliver to Pledgor such documents as Pledgor shall reasonably request to evidence such termination. Such documents shall be prepared by Pledgor and shall be in form and substance reasonably satisfactory to Secured Party. For purposes of this Agreement, the term "Paid-in-Full" shall mean the payment in full in cash (or other consideration acceptable to Secured Party) of all Obligations.

Notices. All notices and other communications hereunder shall be in writing and shall be deemed duly given: (a) on the date of delivery if delivered personally; (b) on the date sent by facsimile (with confirmation of transmission) or electronic mail; (c) if dispatched via a nationally recognized overnight courier service (delivery receipt requested), on the later of (i) the first business day following the date of dispatch, or (ii) the scheduled date of delivery by such service; or (d) on the fifth business day following the date of mailing, if mailed by registered or certified mail, return receipt requested, postage prepaid to the party to receive such notice, at such party's address as set forth in the preamble of this Agreement (or such subsequent address established by a party by due notice in accordance with this provision).

Waiver. The failure of Secured Party to require the performance of any term or obligation of this Agreement, or the waiver by Secured Party of any breach of this Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

Cumulative Remedies. The remedies herein provided are cumulative and not exclusive of any remedies provided under the Note or by law. Pledgor waives any right to require Secured Party to proceed against any other person or entity or to exhaust any other remedy available to Secured Party.

Binding Effect. This Agreement will be binding upon, inure to the benefit of and be enforceable by, the successors and assigns of the parties hereto.

Expenses. Each party shall pay all of its own costs and expenses, including legal, accounting, consulting, and other professional fees, incurred in connection with the negotiation, preparation and performance of this Agreement.

Entire Agreement; Amendment. This Agreement, together with the attached Exhibit, constitutes the entire agreement and understanding between the parties and supersedes all other agreements and understandings, both written and oral, of the parties relating to the subject matter

25-11336-jps   Doc 139   FILED 04/06/26   ENTERED 04/06/26 13:19:16   Page 15 of 36

hereof. This Agreement may only be amended by an instrument in writing signed by the parties to this Agreement.

Governing Law; Venue. This Agreement will be governed by and construed in accordance with the laws of the State of Ohio, without regard to any conflict of laws or choice of law provisions. Hereinabove, the laws of the State of Ohio and the regulatory oversight by any agencies thereof shall be referred to as "Applicable Law". The parties hereby agree that any legal or equitable action or proceeding with respect to this Agreement shall be brought only in any state court in the State of Ohio, and each of the parties hereby submits to and accepts generally and unconditionally the jurisdiction of those courts with respect to such party and such party's property and irrevocably consents to the service of process in connection with any such action or proceeding by personal delivery or by the mailing thereof by registered or certified mail, postage prepaid to the party's address first set forth above.

Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement.

[*Signature Page Follows*]

18324227v1

4

WHEREFORE, the parties have executed this Agreement effective as of the date first above written.

**SECURED PARTY:**

Joseph T. Ciresi

**PLEDGOR:**

Jason Dicks

18324227v1

# EXHIBIT A

## ASSIGNMENT OF MEMBERSHIP INTEREST

FOR VALUE RECEIVED, JASON DICKS, an individual ("**Assignor**"), and subject to Applicable Law (as defined in the Membership Interest Pledge Agreement, dated as of even date herewith), hereby assigns, transfers and conveys to JOSEPH T. CIRESI, an individual ("**Assignee**"), membership interest units (the "**Units**") owned by Assignor in Pizzeria Management III LLC, an Ohio limited liability company (the "Company"), in an amount equal to 100% of the outstanding, issued membership Units of Assignor.

PIZZERIA MANAGEMENT III LLC

Jason Dicks

Dated: 3-7-2023

18324227v1





## Lease Amendment.pdf

| | |
|---|---|
| DocVerify ID: | AFD47023-378E-4CD4-AB15-03C0112E5BBA |
| Created: | March 09, 2023 07:38:51 -8:00 |
| Pages: | 12 |
| Remote Notary: | Yes / State: OH |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Anthony Panzica (AMP)**
March 09, 2023 07:52:40 -8:00 [9852B094614D] [199.73.104.242]
tonyp@panzica.com (Principal) (Personally Known)

**E-Signature Notary: Alexandra Payto (AKP)**
March 09, 2023 07:52:40 -8:00 [5495729D5F55] [69.135.71.194]
Alexandra@lddlegal.com
I, Alexandra Payto, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.




# THIRD AMENDMENT TO LEASE

This Third Amendment to Lease ("Third Amendment") is entered into on this _6_ day of March 2023 by and between **NEWBURY CENTER, LLC**, an Ohio limited liability company (hereinafter "Landlord") and **PIZZERIA MANAGEMENT III LLC**, an Ohio limited liability company **dba ZEPPE'S OF NEWBURY** (hereinafter "Tenant").

**WHEREAS,** on or about January 31, 2011 Landlord and Tenant executed a Lease for the premises located at 11110 Kinsman Road, Newbury, Geauga County, Ohio; and

**WHEREAS,** on or about February 1, 2012, Landlord and Tenant executed a First Amendment ("First Amendment") to Lease, on or about January 27, 2021 Landlord and Tenant executed an Addendum to Lease for Rent Deferment ("Deferment Addendum") and on or about April 12, 2022 Landlord and Tenant executed a Second Amendment to Lease (the "Second Amendment") (the Lease, First Amendment, Deferment Addendum and Second Amendment are collectively referred to as the "Lease"); and

**WHEREAS,** on or about _March 13_, 2023 one hundred percent (100%) of the membership interest in Tenant was sold and assigned to Jason Dicks, and in consideration of Landlord consenting to such sale and assignment, Jason Dicks and Joseph T. Ciresi agreed to guaranty the Lease as more fully stated in their respective guaranties and Tenant herein agrees to increase its security deposit with Landlord; and

**WHEREAS,** Landlord and Tenant desire to amend the Lease to provide for, among other things, the guaranties, increase in security deposit and incorporation of a franchise addendum.

**NOW THEREFORE,** in consideration of the mutual covenants contained herein, Landlord and Tenant agree as follows:

1. **Change in Ownership.** The parties acknowledge that ownership in Tenant has changed from Joseph T. Ciresi to Jason Dicks.

2. **Franchise Agreement.** The Franchise Agreement attached hereto and incorporated herein as Exhibit "A" is hereby made supplemental part of the Lease.

3. **Guaranties.** Joseph T. Ciresi shall execute the guaranty attached hereto as Exhibit "B" and Jason Dicks shall execute the guaranty attached hereto as Exhibit "C".

4. **Security Deposit.** Landlord currently has on deposit the sum of $3,000.00. Tenant agrees to deposit an additional sum of $3,371.00 to be added to the security deposit. Said amount shall be deposited with Landlord over a period of six (6) months commencing April 1, 2023 as equal installments with the payment of rent ($561.83/mo).

1

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com

Page 1 of 12          103C0112E5BBA

**IN WITNESS WHEREOF**, the parties have executed this agreement the day and year first above written.

TENANT: **PIZZERIA MANAGEMENT III LLC**
dba Zeppe's of Newbury

By: **Jason Dicks**
Its: Pres.dent

LANDLORD: **NEWBURY CENTER, LLC**

*Anthony Panzica*

By: **Anthony Panzica**, Authorized Agent

3

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com
AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07 38:51 -8:00 --- Remote Notary

Page 2 of 12     203C0112E5BBA

STATE OF OHIO      )
                    ) SS:
COUNTY OF __Geauga__ )

       BEFORE ME, a Notary Public, in and for said State and County, personally appeared **JASON DICKS, as** _President_ **of PIZZERIA MANAGEMENT III LLC dba Zeppe's of Newbury** who acknowledged that he has signed the foregoing Lease as the duly authorized officer of said company and that the same is the free act and deed of said company and the free act and deed of him personally as such officer. *This is an acknowledgement certificate; no oath or affirmation was administered to the signer with regard to this notarial act.*

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 5ᵗʰ day of ___March___, 2023 at ___Newbury___, Ohio.

**Brian Cain**
Notary Public, State of Ohio
My Commission Expires 1-2-2027
Registered in Geauga County

_____
Notary Public

STATE OF             )
                    ) SS:
COUNTY OF          )

       BEFORE ME, a Notary Public, in and for said State and County, personally appeared **ANTHONY PANZICA, Authorized Agent** of **NEWBURY CENTER, LLC** who acknowledge that he has signed the foregoing Lease as the duly authorized officer of said company and that same is the free act and deed of said company and the free act and deed of him personally as such officer. *This is an acknowledgement certificate; no oath or affirmation was administered to the signer with regard to this notarial act.*

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ____ day of ___03/09/2023___, 2023 at ___Pepper Pike, Ohio___, _____.

**Alexandra Payto**
Commission # 2015-RE-533086
Electronic Notary Public
State of Ohio
My Comm Exp. May 19, 2025

Notary _____

Notarized/Confirmed by audio-visual communication

4

AFD47023-378E-4CD4-AB15-03C0112E5BBA — 2023/03/09 07:38:51 -8:00 — Remote Notary

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com
Page 3 of 12    303C0112E5BBA

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com

25-11336-jps    Doc 139    FILED 04/06/26    ENTERED 04/06/26 13:19:16    Page 23 of 36

DocuSign Envelope ID: D0107833-F489-4C60-B158-5F0331B87AC0

Zeppe's Tavern Franchise LLC
FRANCHISE AGREEMENT
EXHIBIT H

## AGREEMENT WITH LANDLORD

**THIS LEASE-RELATED AGREEMENT** (the "**Agreement**") has been executed as of this __7__ day of __MARCH__, 2023, by and between Jason Dicks ("**Franchisee**") and Newbury Center LLC ("**Landlord**"), as an Agreement to the lease, as modified, amended, supplemented, renewed and/or extended from time to time as contemplated herein ("**Lease**") dated as of January 31, 2011 with an amendment dated February 1, 2012, an addendum to lease for rent deferment dated January 27, 2021 and an amendment dated April 1, 2022 for the premises located at 11110 Kinsman Rd. Newbury, OH 44065, in the State of Ohio ("**Premises**").

Franchisee has also entered (or will also enter) into a Franchise Agreement ("**Franchise Agreement**") with Zeppe's Tavern Franchise LLC ("**Franchisor**") for the development and operation of a Zeppe's Tavern Business at the Premises, and as a condition to obtaining Franchisor's approval of the Lease, the Lease for the Premises must contain the provisions contained in this Agreement.

**NOW THEREFORE**, in consideration of mutual covenants set forth herein, the execution and delivery of the Lease, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Landlord, Franchisee, and Franchisor agree as follows:

1. Landlord agrees to deliver to Franchisor a copy of any notice of default or termination of the Lease at the same time such notice is delivered to Franchisee. Franchisor agrees to deliver to Landlord a copy of any notice of termination under the Franchise Agreement. Although it is the intention of Landlord and Franchisor to provide such notices to one another, neither shall have liability to each other if they do not provide such notices. Franchisee consents to that exchange of information by Landlord and Franchisor.

2. Franchisee assigns to Franchisor, with Landlord's irrevocable and unconditional consent, all of Franchisee's rights, title and interests to and under the Lease upon any termination or non-renewal of the Franchise Agreement, but no such assignment will be effective unless and until: **(a)** the Franchise Agreement is terminated or expires without renewal; **(b)** Franchisor has exercised its Option to Purchase under the Franchise Agreement; and **(c)** Franchisor notifies the Franchisee and Landlord in writing that Franchisor assumes Franchisee's obligations under the Lease, including the obligation to cure any defaults by Franchisee.

3. Franchisor will have the right, but not the obligation, to cure any breach of the Lease (within fifteen (15) business days after the expiration of the period in which Franchisee had to cure any such default should Franchisee fail to do so) upon giving written notice of its election to Franchisee and Landlord, and, if so stated in the notice, to also succeed to Franchisee's rights, title and interests thereunder. Franchisee agrees that the Lease may not be modified, amended, supplemented, renewed or extended beyond any options granted in the Lease, or assigned without Franchisor's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

Exhibit H-1

18214821v4                                   Zeppe's Tavern Franchise LLC Franchise Agreement

4.    Franchisee and Landlord agree that Franchisor will not incur any liability or obligation under the Lease unless and until Franchisor assumes the Lease in writing pursuant to Section 2 or Section 3 above.

5.    If Franchisor assumes the Lease, as provided above, then Franchisor may, only with Landlord's prior consent, which will not be unreasonably withheld, conditioned or delayed, further assign the Lease to another franchisee of Franchisor to operate a Zeppe's Tavern business at the Premises provided that the proposed franchisee has met all of Franchisor's applicable criteria and requirements and has executed a franchise agreement with Franchisor and has personal financial statements and operational history reasonably acceptable to Landlord and further that the principals of such franchisee execute a personal guaranty with respect to the Lease in favor of Landlord. Landlord agrees to execute such further documentation to confirm its consent to the assignment permitted under this Agreement as Franchisor may reasonably request. Upon such assignment to a franchisee of Franchisor, Franchisor will be released from any further liability under the terms and conditions of the Lease.

6.    Landlord and Franchisee acknowledge that Franchisee has agreed under the Franchise Agreement that Franchisor and its employees or agents will have the right to enter the Premises for certain purposes. Landlord agrees not to interfere with or prevent such entry by Franchisor, its employees or agents. Landlord and Franchisee further acknowledge that if the Franchise Agreement expires (without renewal) or is terminated, Franchisee is obligated to take certain steps under the Franchise Agreement to de-identify the Premises as a Zeppe's Tavern & Pizzeria business (unless Franchisor takes an assignment of the lease, as provided above). Landlord agrees to permit Franchisor, its employees or agent, to enter the Premises and remove signs (both interior and exterior), décor and materials displaying any marks, designs or logos owned by Franchisor, provided that Franchisor will bear the expense of repairing any damage to the Premises as a result thereof.

7.    If Landlord is an affiliate or a Principal of Franchisee, Landlord and Franchisee agree that if Landlord proposes to sell the Premises, before the sale of the Premises, upon the request of Franchisor the Lease will be amended to reflect a rental rate and other terms that are the reasonable and customary rental rates and terms prevailing in the community where the Zeppe's Tavern & Pizzeria business is located.

8.    Landlord agrees that during and after the term of the Lease, it will not disclose or use Franchisor's Confidential Information (as defined below) for any purpose other than for the purpose of fulfilling Landlord's obligations under the Lease or pursuing any default under the Lease by Franchisee, Franchisor or any future franchisee. "**Confidential Information**" as used herein will mean all non-public information and tangible things, whether written, oral, electronic or in other form, provided or disclosed by or on behalf of Franchisee to Landlord, or otherwise obtained by Landlord, regarding the design and operations of the business located at the Premises, including all information identifying or describing the floor plan and layout, furnishings, equipment, fixtures, wall coverings, flooring materials, shelving, decorations, trade secrets, techniques, trade dress, "look and feel," design, manner of operation, suppliers, vendors, and all other products, goods, and services used, useful or provided by or for Franchisee on the Premises. Landlord acknowledges that all such Confidential Information belongs exclusively to Franchisor.

9.    Landlord agrees that: (a) Franchisor has granted to only one party, the Franchisee, the right to use Franchisor's proprietary trade name, trademarks, service marks logos, insignias, slogans, emblems,

18214821v4                                                    Zeppe's Tavern Franchise LLC Franchise Agreement

DocuSign Envelope ID: D0107833-F489-4C60-B158-5F0331B87AC0

symbols, designs and indicia of origin (collectively the "**Marks**") at the Premises under the terms of the Franchise Agreement; and **(b)** Franchisor has not granted any rights or privileges to use the Marks to Landlord.

10. Landlord and Franchisee agree that the premises will be used solely for the operation of a Zeppe's Tavern & Pizzeria business.

11. Landlord and Franchisee agree that any default under the lease will also constitute a default under the Franchise Agreement, and any default under the Franchise Agreement will also constitute a default under the lease.

12. Landlord and Franchisee agree that the terms contained herein will supersede any terms to the contrary set forth in the Lease.

13. Franchisor, along with its successors and assigns, is an intended third party beneficiary of the provisions of this Agreement.

14. Landlord and Franchisee agree that copies of any and all notices required or permitted under this Agreement, or under the Lease, will also be sent to Franchisor at 25780 Miles Rd. Suite A Bedford Hts., OH 44146 (attention Cassie Ciresi), or to such other address as Franchisor may specify by giving written notice to Landlord.

WITNESS the execution hereof under seal.

**Landlord:**

_ANTHONY M PANZICA_
888FE1085DF1427...
Date: 3/9/2023

**Franchisee:**

Date: 3-7-2023

**Franchisor***

Date: 3/7/23

Exhibit H-3

18214821v4

Zeppe's Tavern Franchise LLC Franchise Agreement

# EXHIBIT "B"

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary

# LEASE GUARANTY

In consideration of the sum of One Dollar ($1.00) and as a material inducement and consideration for Landlord to consent to the assignment of membership interest in Pizzeria Management III LLC ("Tenant") from Joseph T. Ciresi to Jason Dicks so that Jason Dicks will be the operator of the restaurant that is subject to that certain Lease dated January 31, 2011, as amended, by and between Tenant and **Newbury Center, LLC**, as Landlord (the "Lease"), the undersigned, **Joseph T. Ciresi** ("Guarantor"), does hereby unconditionally, irrevocably and absolutely guarantee to Landlord, its successors and assigns, the full, faithful and prompt performance and observance of all of the covenants, conditions and agreements of the Lease and any amendments, modifications **for the period commencing March 1, 2023 and ending on February 29, 2024 (the "Guaranty Period")** therein provided to be performed and observed by Tenant, its successors and assigns, during the Guaranty Period and expressly agrees that the validity of this Lease Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by Landlord against Tenant or any other guarantor of the Lease of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease or any other guaranty, or by reason of the waiver by Landlord of, or the failure of Landlord to enforce any of the terms, covenants and conditions of the Lease, or the granting of any indulgence or extension of time to Tenant, all of which may be given or done without notice to Guarantor.

This Lease Guaranty is a guaranty of payment, performance and compliance and not of collectability and may be enforced after the expiration of the Guaranty Period but only for obligations that first arise or are required to be performed during the Guaranty Period. The obligation of Guarantor hereunder shall not be released by Landlord's receipt, application or release of security given for the performance and observance of covenants and conditions required to be performed and observed by Tenant under said Lease, nor shall the Guarantor be released by the maintenance of or execution upon any lien which Landlord may have or assert against Tenant and/or Tenant's assets.

Guarantor waives notice of default in the payment of base rent, additional rent and any other amounts contained or reserved in the Lease, or notice of a breach or nonperformance of any of the covenants, conditions or agreements contained in the Lease. Guarantor further covenants and agrees that this agreement and guaranty contained herein shall remain and continue in full force and effect as to any amendment, modification, renewal, or extension of the within Lease, any holding over periods, or any period in which Tenant is deemed to be in possession of the Premises, to all of which Guarantor hereby consents in advance, except that Guarantor's responsibility and obligations relate solely to the Guaranty Period.

The guaranty contained herein is absolute and unconditional and shall be a continuing guarantee. The liability of the Guarantor hereunder shall in no way be affected by (a) the release or discharge of Tenant in any creditors', receivership, bankruptcy or other proceedings, (b) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's said liability under the Lease, resulting from the operation of any present or future provision of the Bankruptcy Code or other statute or from the decision in any court; (c) the rejection or disaffirmance of the Lease in any such

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary



25-11336-jps    Doc 139    FILED 04/06/26    ENTERED 04/06/26 13:19:16    Page 28 of 36

proceedings; (d) the assignment or transfer of the Lease or any subletting of the Premises by Tenant by operation of law or otherwise; (e) any disability or other defense of Tenant, or (f) the cessation from any cause whatsoever of the liability of Tenant.

Guarantor further agrees that his/her/its liability under this Lease Guaranty shall be primary and not as a guarantor, and that in any right of action which shall accrue to Landlord under, in connection with or arising out of the Lease, Landlord may, at its option, proceed against Guarantor without having commenced any action or having obtained any judgment against Tenant. The heading of this instrument and the words "Guaranty" and "guarantees" shall not be interpreted to limit the aforesaid primary obligation of Guarantor under the Lease.

Until all the covenants and conditions in the Lease on Tenant's part of be performed and observed are fully performed and observed, Guarantor (a) shall have no right of subrogation against Tenant by reason of any payments or acts of performance by Guarantor, in compliance with the obligations of Guarantor hereunder; (b) waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor hereunder; and (c) subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to Landlord under the Lease.

This Lease Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, administrators, personal representatives, successors and assigns and shall inure to the benefit of and be enforceable by Landlord and its successors and assigns. If there is more than one person, trust, or entity as a party or signatory to this Lease Guaranty the word "Guarantor" shall apply to each such person, trust or entity collectively and individually and each is and agrees to be jointly and severally bound and liable hereunder.

In the event that any one or more of the provisions contained in this Lease Guaranty or any application thereof shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and any other applications thereof shall not in any way be affected or impaired thereby. The terms of this Lese Guaranty may not be waived, altered, modified, supplemented or amended except by written instrument signed by Guarantor and by Landlord. Guarantor hereby agrees to execute and deliver all such instruments, and take such actions as Landlord, or any assignee, may instruct in order to effectuate fully the purposes of this Lease Guaranty.

This Lease Guaranty shall be construed under the laws of the State of Ohio. Guarantor hereby submits itself to the jurisdiction of the courts of the state in which the Premises is located.

**WAIVER OF RIGHT TO TRIAL BY JURY: GUARANTOR ACKNOWLEDGES THAT THE COMMERCIAL NATURE OF THE LEASE OUT OF WHICH THIS LEASE GUARANTY ARISES WOULD MAKE ANY AND ALL DISPUTES THAT MAY ARISE BETWEEN GUARANTOR AND LANDLORD UNSUITABLE FOR TRIAL BY JURY. ACCORDINGLY, GUARANTOR HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY AS TO ANY AND ALL DISPUTES THAT MAY ARISE FROM THIS LEASE GUARANTY.**

AFD47023-378E-4CD4-AB15-03C0112E5BBA — 2023/03/09 07:38:51 -8:00 — Remote Notary

25-11336-jps    Doc 139    FILED 04/06/26    ENTERED 04/06/26 13:19:16    Page 29 of 36

> NOTWITHSTANDING THE FOREGOING, SO LONG AS TENANT FULLY PERFORMS ALL OF ITS OBLIGATIONS UNDER THE LEASE DURING THE GUARANTY PERIOD, THEN UPON THE EXPIRATION OF THE GUARANTY PERIOD THIS GUARANTY SHALL TERMINATE AND BE OF NO FURTHER FORCE AND EFFECT.

**GUARANTOR:**



Name: Joseph T. Ciresi

SSN:_____

COUNTY OF       )
                   )    SS:

STATE OF *Cuyahoga*  )

      Before me, a Notary Public in and for said County and State, personally appeared the above-named Joseph T. Ciresi who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed. *This is an acknowledgment certificate; no oath or affirmation was administered to the signer with regard to this notarial act.*

      In Testimony Whereof, I have hereunto set my hand and official seal at _Bedford Hts_, _Ohio_ this _8_ day of _March_ , 2023.

_____
Notary Public

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary

EXHIBIT "C"

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com

# LEASE GUARANTY

In consideration of the sum of One Dollar ($1.00) and as a material inducement and consideration for Landlord to consent to the assignment of membership interest in Pizzeria Management III LLC ("Tenant") from Joseph T. Ciresi to Jason Dicks so that Jason Dicks will be the operator of the restaurant that is subject to that certain Lease dated January 31, 2011, as amended, by and between Tenant and **Newbury Center, LLC**, as Landlord (the "Lease"), the undersigned, **Jason Dicks** ("Guarantor"), does hereby unconditionally, irrevocably and absolutely guarantee to Landlord, its successors and assigns, the full, faithful and prompt performance and observance of all of the covenants, conditions and agreements of the Lease, any amendments, and any Lease extensions, renewals, modifications, holdovers, or any period in which Tenant is deemed to have possession of the Premises (as defined in the Lease) therein provided to be performed and observed by Tenant, its successors and assigns, and expressly agrees that the validity of this Lease Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease, or by reason of the waiver by Landlord of, or the failure of Landlord to enforce any of the terms, covenants and conditions of the Lease, or the granting of any indulgence or extension of time to Tenant, all of which may be given or done without notice to Guarantor.

This Lease Guaranty is a guaranty of payment, performance and compliance and not of collectability. The obligation of Guarantor hereunder shall not be released by Landlord's receipt, application or release of security given for the performance and observance of covenants and conditions required to be performed and observed by Tenant under said Lease, nor shall the Guarantor be released by the maintenance of or execution upon any lien which Landlord may have or assert against Tenant and/or Tenant's assets.

Guarantor waives notice of default in the payment of base rent, additional rent and any other amounts contained or reserved in the Lease, or notice of a breach or nonperformance of any of the covenants, conditions or agreements contained in the Lease. Guarantor further covenants and agrees that this agreement and guaranty contained herein shall remain and continue in full force and effect as to any amendment, modification, renewal, or extension of the within Lease, any holding over periods, or any period in which Tenant is deemed to be in possession of the Premises, to all of which Guarantor hereby consents in advance.

In addition, the undersigned personally guarantees that the entire Premises will be delivered back to Landlord broom clean in its original condition less ordinary wear and tear as called for in the Lease.

The guaranty contained herein is absolute and unconditional and shall be a continuing guarantee. The liability of the Guarantor hereunder shall in no way be affected by (a) the release or discharge of Tenant in any creditors', receivership, bankruptcy or other proceedings, (b) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's said liability under the Lease, resulting from the operation of any present or future provision of the Bankruptcy Code or other statute or from the decision in any court; (c) the rejection or disaffirmance of the Lease in any such

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary


25-11336-jps   Doc 139   FILED 04/06/26   ENTERED 04/06/26 13:19:16   Page 32 of 36

proceedings; (d) the assignment or transfer of the Lease or any subletting of the Premises by Tenant by operation of law or otherwise; (e) any disability or other defense of Tenant, or (f) the cessation from any cause whatsoever of the liability of Tenant.

Guarantor further agrees that his/her/its liability under this Lease Guaranty shall be primary and not as a guarantor, and that in any right of action which shall accrue to Landlord under, in connection with or arising out of the Lease, Landlord may, at its option, proceed against Guarantor without having commenced any action or having obtained any judgment against Tenant. The heading of this instrument and the words "Guaranty" and "guarantees" shall not be interpreted to limit the aforesaid primary obligation of Guarantor under the Lease.

Until all the covenants and conditions in the Lease on Tenant's part of be performed and observed are fully performed and observed, Guarantor (a) shall have no right of subrogation against Tenant by reason of any payments or acts of performance by Guarantor, in compliance with the obligations of Guarantor hereunder; (b) waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor hereunder; and (c) subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to Landlord under the Lease.

This Lease Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, administrators, personal representatives, successors and assigns and shall inure to the benefit of and be enforceable by Landlord and its successors and assigns. If there is more than one person, trust, or entity as a party or signatory to this Lease Guaranty the word "Guarantor" shall apply to each such person, trust or entity collectively and individually and each is and agrees to be jointly and severally bound and liable hereunder.

In the event that any one or more of the provisions contained in this Lease Guaranty or any application thereof shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and any other applications thereof shall not in any way be affected or impaired thereby. The terms of this Lese Guaranty may not be waived, altered, modified, supplemented or amended except by written instrument signed by Guarantor and by Landlord. Guarantor hereby agrees to execute and deliver all such instruments, and take such actions as Landlord, or any assignee, may instruct in order to effectuate fully the purposes of this Lease Guaranty.

This Lease Guaranty shall be construed under the laws of the State of Ohio. Guarantor hereby submits itself to the jurisdiction of the courts of the state in which the Premises is located.

**WAIVER OF RIGHT TO TRIAL BY JURY: GUARANTOR ACKNOWLEDGES THAT THE COMMERCIAL NATURE OF THE LEASE OUT OF WHICH THIS LEASE GUARANTY ARISES WOULD MAKE ANY AND ALL DISPUTES THAT MAY ARISE BETWEEN GUARANTOR AND LANDLORD UNSUITABLE FOR TRIAL BY JURY. ACCORDINGLY, GUARANTOR HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY AS TO ANY AND ALL DISPUTES THAT MAY ARISE FROM THIS LEASE GUARANTY.**

AFD47023-378E-4CD4-AB15-03C0112E5BBA --- 2023/03/09 07:38:51 -8:00 --- Remote Notary

DocVerify ID: AFD47023-378E-4CD4-AB15-03C0112E5BBA
www.docverify.com
Page 11 of 12    1103C0112E5BBA



25-11336-jps    Doc 139    FILED 04/06/26    ENTERED 04/06/26 13:19:16    Page 33 of 36

**GUARANTOR:**



Name: Jason Dicks ▆▆▆▆▆▆
SSN:___▆▆▆▆▆▆▆▆▆

| | | |
|---|---|---|
| COUNTY OF | ) | |
| | ) | SS: |
| STATE OF OHIO | ) | |

Before me, a Notary Public in and for said County and State, personally appeared the above-named Jason Dicks who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed. *This is an acknowledgment certificate; no oath or affirmation was administered to the signer with regard to this notarial act.*

In Testimony Whereof, I have hereunto set my hand and official seal at _Newbury_, Ohio this 8ᵗʰ day of _March_, 2023.

**Brian Cain**
Notary Public, State of Ohio
My Commission Expires 1-2-2027
Registered in Geauga County

Notary Public

AFD47023-378E-4CD4-AB15-03C0112E5BBA — 2023/03/09 07:38:51 -8:00 — Remote Notary

**Zeppe's Tavern Franchise LLC**
# Transactions by Account
**All Transactions**

Exhibit C

| Type | Date | Num | Name | Memo | Clr | Split | Amount |
|------|------|-----|------|------|-----|-------|--------|
| **Newbury Deferment** | | | | | | | |
| Invoice | 04/16/2025 | 207 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,050.19 |
| Invoice | 04/30/2025 | 210 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,110.68 |
| Invoice | 05/16/2025 | 213 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,187.47 |
| Invoice | 05/30/2025 | 217 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,463.20 |
| Invoice | 06/16/2025 | 218 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,438.91 |
| Invoice | 06/30/2025 | 222 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,439.89 |
| Invoice | 07/16/2025 | 223 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,422.35 |
| Invoice | 07/31/2025 | 226 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,543.94 |
| Invoice | 08/18/2025 | 230 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,479.37 |
| Invoice | 08/31/2025 | 231 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,464.87 |
| Invoice | 09/16/2025 | 235 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,295.48 |
| Invoice | 09/30/2025 | 238 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,195.38 |
| Invoice | 10/16/2025 | 241 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,221.99 |
| Invoice | 10/31/2025 | 245 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,132.65 |
| Invoice | 11/17/2025 | 247 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -960.42 |
| Invoice | 11/30/2025 | 248 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -928.10 |
| Invoice | 12/16/2025 | 252 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -849.32 |
| Invoice | 12/31/2025 | 253 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,072.38 |
| Invoice | 01/16/2026 | 257 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -856.28 |
| Invoice | 01/31/2026 | 258 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -975.45 |
| Invoice | 02/16/2026 | 262 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -975.09 |
| Invoice | 02/28/2026 | 266 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -846.79 |
| Invoice | 03/16/2026 | 267 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,050.34 |
| Invoice | 03/31/2026 | 271 | Zeppes of Newbury-... | Deferment | | Accounts Rece... | -1,187.24 |
| Total Newbury Deferment | | | | | | | -28,147.78 |
| **TOTAL** | | | | | | | **-28,147.78** |

**7:34 AM**

**04/03/26**

**Accrual Basis**

**Zeppe's Tavern Franchise LLC**
**Transactions by Account**
**All Transactions**

| Balance |
| --- |
| -1,050.19 |
| -2,160.87 |
| -3,348.34 |
| -4,811.54 |
| -6,250.45 |
| -7,690.34 |
| -9,112.69 |
| -10,656.63 |
| -12,136.00 |
| -13,600.87 |
| -14,896.35 |
| -16,091.73 |
| -17,313.72 |
| -18,446.37 |
| -19,406.79 |
| -20,334.89 |
| -21,184.21 |
| -22,256.59 |
| -23,112.87 |
| -24,088.32 |
| -25,063.41 |
| -25,910.20 |
| -26,960.54 |
| -28,147.78 |
| -28,147.78 |
| **-28,147.78** |