# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

IN RE JASON DICKS
*Debtor*

CASE NO. 25-11336
JUDGE PRICE SMITH
CHAPTER 11
SUBCHAPTER V

## RESPONSE IN OPPOSITION OF JASON DICKS TO MOTION TO CONVERT OR DISMISS CASE FILED BY JOESPH T. CIRESI, CASSIE CIRESI, AND ZEPPE'S TAVERN FRANCHISE LLC [DOC. 136]

Jason Dicks, as both the debtor and debtor-in-possession ("Debtor"), opposes the Motion to Convert or Dismiss Case filed by Joesph T. Ciresi, Cassie Ciresi, and Zeppe's Tavern Franchise LLC [Doc. 136] (collectively "Ciresi" and "Motion").

### JURISDICTION

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and General Order 2012-7 of the United States District Court for the Northern District of Ohio. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### BACKGROUND

2. The Debtor is the sole owner of Pizzeria Management III LLC ("PM3"). PM3 is in its own Chapter 11 Bankruptcy case under Subchapter V of Chapter 11 of the Bankruptcy Code, Case No. 25-11334. PM3 operates a restaurant and tavern at 11110 Kinsman Rd., Newbury Ohio ("Newbury Tavern").

3. On or about August 10, 2022, the Debtor entered into a loan and mortgage agreement with Guaranteed Rate, Inc. that is now serviced or held by Lakeview and secured by a first priority mortgage on his residence at 13910 Claridon Troy Rd, Burton Ohio ("Home"). Lakeview filed Proof of Claim ("POC") No. 17 asserting that $337,248.76 remains owing on this loan as of the Petition Date. Due to a shortfall of income shortly after the Petition Date, the Debtor fell behind on monthly payments due on his first mortgage with Lakeview. The Debtor

1

caught these payments back up by making 4 monthly payments of $5,000 each in addition to his regular monthly payment and the Debtor is and will remain current with Lakeview.

4. On February 23, 2023, the Debtor entered into a Membership Interest Purchase Agreement ("Purchase Agreement") with Joseph T. Ciresi under which the Debtor acquired 100% of the membership interests in PM3 from Mr. Ciresi in return for a purchase price of $575,000 ("Purchase Price"). The Purchase Price was paid as follows: $100,000 in cash was paid at closing; a cognovit note payable for unclear reasons to Mr. Ciresi and Cassie Ciresi for $150,000 and secured by a second priority mortgage on the Home to Mr. Ciresi ("Ciresi Mortgage and Note"); and another note made by the Debtor and PM3 and again payable for unclear reasons to Mr. Ciresi and Cassie Ciresi for $325,000 which was purportedly secured by a Membership Interest Pledge Agreement ("Pledge Agreement and Note") which pledged the purchased membership interests in PM3 as collateral for the second note.

5. At or about the same time as the execution of the Purchase Agreement, the Debtor personally entered into a franchise agreement with Zeppe's for the Newbury Tavern operated by PM3 ("Franchise Agreement").

6. iPlanGroup FBO Christian Carson ("Carson") funded the $100,000 in cash paid to Mr. Ciresi under the Purchase Agreement. On March 1, 2025, the Debtor and PM3 signed an Amended and Restated Loan and Security Agreement whereby Mr. Carson lent an additional $40,000 to PM3 and Mr. Dicks for PM3 Operating expenses, and in return granting Mr. Carson a security interest in accounts, inventory, and equipment. The Debtor and PM3 owe Mr. Carson $117,000.00.

7. The Debtor has several credit cards and lines of credit most of which were used to fund PM3's business operations. The approximate total amount of these creditors is $396,000.

2

8. Zeppe's threatened to terminate PM3's franchise and to repossess the location. As all of the relevant documents including the Franchise Agreement are with the Debtor, both PM3 and the Debtor filed to prevent Zeppe's attempt to seize the Debtor's and PM3's assets.

9. The Debtor filed an adversary proceeding to determine and avoid the mortgage and security interests of Ciresi in the Home and the Debtor's PM3 Membership Interests and challenges the validity of the Ciresi claim Adv. Case No. 25-1063 ("Adversary").

10. On September 22, 2025, Ciresi filed their answer to the complaint in the Adversary [Adv. Doc. 8]. In their answer the Ciresi's asserted in paragraph 4 of their affirmative defenses "upon information and belief, Joseph T. Ciresi never executed an assignment of the membership interests in Pizzeria Management III LLC in favor of Plaintiff. As a result, Plaintiff does not have proper title to the membership interests in Pizzeria Management III LLC, and Joseph T. Ciresi remains the legal owner of the membership interests." In other words, the Ciresi's plead that they breached the Purchase Agreement.

11. The Home has an appraised fair market value of $420,000. After deducting the amounts owed the Auditor and Lakeview, there is a maximum $80,209.39 in value reached by the Ciresi Mortgage against the Home, which amount does not include certain offsets, affirmative recoveries and defenses of the Debtor to said claim.

12. Ciresi did not file a financing statement with the Ohio Secretary of State to perfect any security interest held or claimed to be held by either of them in the membership interests of PM3. No control agreement exists with respect to the membership units of PM3. Therefore, Ciresi failed to properly perfect any lien or security interest in the membership interests of PM3.

13. On February 24, 2026, Debtor filed the Jason Dicks's Plan of Reorganization Dated February 23, 2026 [Doc. 120] ("Plan").

3

14.     In section 8.01 the plan provides: "The Plan will be primarily implemented and funded through the future salary of the Reorganized Debtor during the Plan Term. Prepetition the Debtor's salary was $50,000 with annual owner draws of approximately another $50,000. Pursuant to 11 U.S.C. § 1129(a)(5), it is disclosed that after the Petition Date the Debtor drew and will continue to draw a salary of $135,500 from PM3, and that such salary may be increased from time to time if PM3 operations warrant the increase."

### ARGUMENT AND LAW

15.     In the Motion Ciresi seeks "an Order converting this case to a proceeding under Chapter 7 or dismissing the case, whichever is in the best interest of creditors." Motion P. 1

16.     Conversion or dismissal of a Chapter 11 case is governed by 11 U.S.C. § 1112(b) that provides in pertinent part:

> (b) (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.
>
> (3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later

4

than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

(4) For purposes of this subsection, the term "cause" includes—

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

17.     Ciresi relies only on subsection (J) as cause, arguing that the Debtor has not yet

confirmed a plan and that his net income is too low to confirm a plan. Ciresi's arguments rely on misleading summaries of the Debtor's operating reports and ignore its own litigious behavior in opposing every plan filed by the Debtor. Ciresi cannot be heard to complain that the case is taking longer to confirm than necessary when it has opposed confirmation of every plan filed by the Debtor.

18. Ciresi first misrepresents the Debtor's net income as set forth on the Debtor's operating reports filed in this case. As noted above, the Debtor's salary was originally at the same level that it was prior to the filing of this bankruptcy case. At the time of filing the Debtor took a salary of approximately $54,000 per year and supplemented it with an additional $50,000 in owner draws from the operation of PM3. Only since the middle of July 2025, has the Debtor been taking a salary of $108,000 per year. Therefore, taking a simple average of the net income set forth on his operating reports is misleading. In addition, the Debtor's income will be increased to $135,500 under the Plan. The Debtor's monthly income does not yet reflect this increase, which is easily affordable based upon the PM3 operations to date. The Ciresi's argument that the Debtor does not have sufficient income to support the Plan is simply wrong.

19. The real goal of the Ciresi's is set forth in Paragraph 20 of the Motion which notes that the membership interest in PM3 held by the Debtor may have some value. The Debtor has been willing to sell these membership interests to the Ciresi's but they have been unwilling to pay the fair market value for these interests. It is obvious that what the Ciresi's would really like to see is the PM 3 case and this case to be converted to Chapter 7 which would wipe out the value of the membership interests leaving the Ciresi's in control of the Newbury Tavern. The Debtor, mindful of his fiduciary duty as a debtor in possession to *all* creditors of this estate, has refused to permit the Ciresi's to take that to which they are not entitled.

6

The court should therefore deny the Motion as nothing other than an attempt by a creditor, one who has pled its own breach of contract in an adversary proceeding, from taking the value of the membership interests from other creditors of this estate and the creditors of PM 3. Therefore, Debtor and Debtor-in-Possession Jason Dicks, requests that the Court deny the Motion.

Respectfully submitted,
/s/ Frederic P. Schwieg, Esq.

Frederic P. Schwieg, Esq. (0030418)
Attorney at Law
19885 Detroit Rd. 3239
Rocky River, OH 44116
(440) 499-4506
fschwieg@schwieglaw.com
Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby certify on April 27, 2026 that a copy of the foregoing Response in Opposition of Jason Dicks to Motion to Convert or Dismiss Case filed by Joesph T. Ciresi, Cassie Ciresi, and Zeppe's Tavern Franchise LLC was served **electronically** Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List::

Christian E Carson on behalf of Creditor IPlanGroup FBO Christian Carson
christian@carsonlaw.com

Thomas W. Coffey on behalf of Interested Party Pizzeria Management III LLC
tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com

Daniel J. Feko on behalf of Creditor Citizens Bank, N.A.
dfeko@simonattys.com, simondocket@simonattys.com

Patricia B. Fugee
patricia.fugee@fisherbroyles.com, cpbf11@trustesolutions.net

Patricia B. Fugee on behalf of Trustee Patricia B. Fugee
patricia.fugee@fisherbroyles.com, cpbf11@trustesolutions.net

Spencer Lutz on behalf of U.S. Trustee United States Trustee
spencer.lutz@usdoj.gov

James Eric Rottinghaus on behalf of Creditor Lakeview Loan Servicing, LLC
cnbkecf@tblaw.com, jrottinghaus@ecf.courtdrive.com

John J. Rutter on behalf of Creditor Zeppes Tavern Franchise LLC
jrutter@ralaw.com

John J. Rutter on behalf of Creditor Cassie Ciresi
jrutter@ralaw.com

John J. Rutter on behalf of Creditor Joe Ciresi
jrutter@ralaw.com

John J. Rutter on behalf of Defendant Cassie Ciresi
jrutter@ralaw.com

John J. Rutter on behalf of Defendant Joseph T. Ciresi
jrutter@ralaw.com

Frederic P. Schwieg on behalf of Debtor Jason James Dicks
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Plaintiff Jason James Dicks
fschwieg@schwieglaw.com

/s/ Frederic P. Schwieg, Esq.
Frederic P. Schwieg, Esq.

8